This is an appeal from an order and judgment quashing garnishments and executions against the defendant housing authorities.
Hamrick Construction Corporation recovered judgments against the Rainsville Housing Authority and the Housing Authority of the City of Boaz. Hamrick sought execution against the housing authorities' real property and filed garnishments against several banks holding money belonging to the housing authorities.
The housing authorities filed a motion to quash the garnishments,[1] stating that they were prohibited by Code 1975, § 24-1-40, which reads:
 "No interest of the authority in any property, real or personal, shall be subject to sale by the foreclosure of a mortgage thereon, either through judicial proceedings or the exercise of a power of sale contained in such mortgage, except in the case of the mortgages provided for in section 24-1-35. All property of the authority shall be exempt from levy and sale by virtue of an execution, or other process, to the same extent as now enjoyed by the properties of towns, cities and counties of Alabama. No judgment against the authority shall be a charge or lien upon its property, real or personal. The provisions of this section shall not apply to or limit the right of obligees to foreclose any mortgage of the authority provided for in section 24-1-35 and, in case of a foreclosure sale thereunder, to obtain a judgment for any deficiency due on the indebtedness secured thereby and issued on the full faith and credit of the authority. Such deficiency judgment shall be a lien and charge upon the property of the authority which may be levied on and sold by virtue of an execution or other judicial process for the purpose of satisfying such deficiency judgment."
Hamrick makes two arguments that this statute should not bar the process sought by Hamrick to recover on its judgment: first, that the property is not exempt because *Page 1297 
municipal or county property used for the purpose to which the housing authorities put their property would not be exempt; second, the statute is unconstitutional because it allows foreclosure and execution by the mortgagees specified in §24-1-35 and by certain holders of tort judgments, but not by other creditors or judgment holders.
The first argument begins with the proposition that housing authority property is exempt only "to the same extent as now enjoyed by the properties of towns, cities and counties of Alabama." Code 1975, § 6-10-10, provides that "[a]ll property, real or personal, belonging to the several counties or municipal corporations in this state and used for county or municipal purposes shall be exempt from levy and sale under any process or judgment whatsoever." This Court has applied this statute and held that city property not used for public purposes may be seized and sold. Russell v. Town of Oneonta,199 Ala. 64, 73 So. 986 (1917); Equitable Loan Sec. Co. v.Town of Edwardsville, 143 Ala. 182, 38 So. 1016 (1905); Ellisv. Pratt City, 111 Ala. 629, 20 So. 649 (1896); Murphree v.City of Mobile, 104 Ala. 532, 156 So. 544 (1894).
Hamrick asserts that the property of the housing authorities is used not for public, but for private purposes, i.e., private housing for low-income individuals and families. There is ample authority to refute the contention that such a use is a "private" use.
The following excerpt from the legislative findings and declaration of necessity of the Housing Authorities Law indicates the legislature's judgment that the housing authorities' property is used for a public purpose:
 "[T]he provision of safe, sanitary and uncongested dwelling accommodations at such rentals that persons who now live in unsafe or unsanitary or congested dwelling accommodations can afford to live in safe, sanitary and uncongested dwelling accommodations, [is a] public use and purpose for which public money may be spent and private property acquired. . . . The necessity in the public interest for this article is hereby declared as a matter of legislative determination."
Code 1975, § 24-1-21.
The legislature declared that "[a]n authority shall constitute a public body and a body corporate and politic exercising public powers . . ." (§ 24-1-27 (a)), and gave authorities the power of eminent domain, § 24-1-28. The whole tenor of the Housing Authorities Law thus indicates a legislative finding that the use of property for the purposes set out in that Law is public use. There is no contention that the appellees use any of their property in a manner other than as allowed by statute.
We see no reason to disturb this legislative declaration of public purpose. Indeed, in Rayborn v. Housing Authority ofWashington County, 276 Ala. 498, 499, 164 So.2d 494 (1964), the parties and the Court took for granted that the defendant's "property for certain purposes is that of a municipal (county) corporation," and did not question the applicability of the parallel exemption of county housing authority property, §24-1-78. See generally 40 Am.Jur.2d Housing Laws and UrbanRedevelopment, esp. §§ 3 and 7 (1968), and cases cited therein.
The above-cited authorities amply establish that public housing projects are a "public use" within the meaning of the municipal exemption which applies to the appellees' property. The argument that the public housing projects of the housing authorities are private uses and thus not exempt must therefore fail.
We next address Hamrick's arguments that the exemptions granted to the housing authorities are unconstitutional. We understand Hamrick to make two such arguments: that the different treatment of creditors violates Hamrick's right to equal protection of the laws, U.S. Const. amend. 14, and that the preclusion of Hamrick from collecting on its judgment violates Hamrick's right not to be deprived of property *Page 1298 
without due process of law, id., and Ala. Const. of 1901, art. I, § 13.
Section 24-1-35 grants the right to foreclose and execute on mortgages made by housing authorities "[i]n connection with any project financed in whole or in part by a government. . . ." This right is granted only to a government holding bonds secured by the mortgage and to trustees or obligees "but only with the consent of the government which aided in financing the housing project involved." Hamrick argues that § 24-1-40, read in light of § 24-1-35, violates the equal protection clause of the 14th Amendment of the United States Constitution because it grants some creditors the right to foreclose against housing authority property while denying other creditors the right to execute on judgments, without a meaningful distinction between the two types of creditors.
Hamrick also argues that § 24-1-40 violates the right to equal protection of the laws by exempting housing authority property "to the same extent as now enjoyed by the properties of towns, cities and counties of Alabama." Section 11-47-191
(b) allows for execution against municipal property under certain conditions by holders of tort judgments, and Hamrick argues that this creates an unconstitutionally unequal treatment of judgment holders. We find no merit in this argument, because we are not inclined to hold in the context of this case that § 11-47-191 (b) allows execution against municipal property which is exempt under § 6-10-10. In other words, nothing in the record before us indicates that a holder of a tort judgment could reach the appellees' property under §11-47-191 (b) in any way in which Hamrick cannot.
Although Hamrick has not raised a substantial equal protection claim regarding § 11-47-191 (b) executions, the claim regarding § 24-1-35 creditors requires more detailed analysis.
The United States Supreme Court has recently addressed the standard of review of equal protection challenges to economic regulations such as those at issue here:
 "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. . . . Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude."
City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513,2516, 49 L.Ed.2d 511 (1976) (citations omitted).
There is no suspect classification involved in this case, so the only basis on which Hamrick's claim should receive stricter scrutiny than the rational relationship test is if the classification "trammels fundamental personal rights." Among such fundamental rights is the right to civil justice or access to courts. Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780,28 L.Ed.2d 113 (1971). See generally, Antieau, TheJurisprudence of Interests and Adjudication of Equal ProtectionControversies, 57 U.Det.J.Urb.L. 831, 838 (1980). Because this right is a right to due process of law, Boddie v. Connecticut,supra, the decision of whether Hamrick has been deprived of this right in a discriminatory manner first requires a determination of whether it has been denied the right to due process.
Hamrick's initial access to court, the proceeding by which it acquired the judgment on which it is suing, is not at issue. Section 24-1-27 (a)(22) grants housing authorities the power to sue and be sued. The access at issue here is that of going to court to enforce a judgment.
In 10 McQuillin, The Law of Municipal Corporations § 28.57 (3d ed. 1981 rev. *Page 1299 
vol.), the exemption of municipal property is discussed as follows:
 "The reason for the exemption is obvious. Municipal corporations are created for public purposes and for the good of the citizens in their aggregate or public capacity. That they may properly discharge such public functions corporate property and revenues are essential, and to deny them these would impede and in some instances practically destroy the purposes of their creation. Respecting this subject the supreme court of Louisiana early remarked: `On the first view of this question there is something very repugnant to the moral sense, in the idea that a municipal corporation should contract debts, and that, having no resources but the taxes which are due to it, these should not be subjected by legal process to the satisfaction of its creditors. This consideration, deduced from the principles of moral duty, has only given way to the more enlarged contemplation of the great and paramount interests of public order and the principles of government.' [Edgerton v. The Third Municipality of New Orleans, 1 La.Ann. 435, 440 (1846) (corrected from the original)]."
(Footnotes omitted.)
This discussion does not answer Hamrick's assertion of the right to due process, but it does indicate the principle on which the question is to be resolved. The longstanding principle of exemption of public property, especially when bolstered by the broader exemption of § 24-1-40, put Hamrick on notice before it ever contracted with the appellee housing authorities that it could not attach the authorities' property to satisfy a claim such as it now has against them. This is not a situation such as that in Boddie v. Connecticut, supra, in which the state denied Boddie access to the only means available for severing the fundamental relation of marriage. Hamrick contracted with the appellees at its own risk, with statutory notice that the legislature had determined that the rights of those with claims against housing authorities were outweighed by the public purpose of maintaining the operation of the housing projects, which were designed to serve a pressing public need.
Moreover, Hamrick may not be entirely without a remedy. In certain circumstances mandamus may lie against municipal officials to compel them to subject surplus revenues of the municipality to the payment of a judgment, Mayor and CityCouncil of Anniston v. Hurt, 140 Ala. 394, 37 So. 220 (1904), or even to levy authorized taxes, Graham v. City of Tuscumbia,146 Ala. 449, 42 So. 400 (1906). See Ex parte Jones,399 So.2d 246 (Ala. 1981). A similar remedy may be available to Hamrick, and thus it is not entirely precluded from bringing an action to enforce its judgment.
For these reasons, we find that Hamrick has not met its burden of demonstrating the unconstitutionality of § 24-1-40 on due process grounds under either Amendment 14 to the Constitution of the United States or § 13 of the Constitution of Alabama of 1901. For the same reasons, strict scrutiny is not invoked to insure equal protection in the denial of the fundamental right of access to courts. All that remains is to analyze Hamrick's equal protection claim under the "rational basis" standard.
The standard for review of equal protection claims is well expressed in Board of Trustees of Employees' Retirement Systemof the City of Montgomery v. Talley, 291 Ala. 307, 311,280 So.2d 553 (1973):
 "The equal protection clause is violated by a classification only when it is without any reasonable basis and is arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369. This court has previously set forth the tests to be applied in determining the constitutionality of a classification system. The class
 "`(1) must be germane to the purpose of the law; (2) must bring within its influence all who are under the same *Page 1300 
conditions and apply equally to each person or member of the class, or each person or member who may become one of such class; (3) must not be so restricted and made to rest upon existing circumstances only as not to include proper additions to the number included within the class; (4) must be based on substantial distinctions which make one class different from another; and (5) must be reasonable under the facts of the case, and not oppressive and prohibitive.'
 "State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843
(1951)."
Statutes creating classifications of creditors and allowing garnishments in some cases and not in others have been upheld in First National Bank v. Dimmick, 190 Ala. 359, 67 So. 309
(1914), and Knight v. Knight, 409 So.2d 432 (Ala.Civ.App. 1982). To determine the constitutionality of the classification in this case, we must look at the statutory scheme as a whole and to the circumstances of the case.
The provision in § 24-1-35 for mortgages and foreclosures thereof in connection with projects financed by a government must be read in conjunction with other sections of the Housing Authorities Law pertaining to financing. Section 24-1-34, for example, states in part:
 "It is the purpose and intent of this article to authorize every authority to do any and all things necessary to secure the financial aid and the cooperation of the federal government in the construction, maintenance and operation of any housing project which the authority is empowered by this article to undertake."
The Legislature passed the Housing Authorities Law in 1935, when financing was difficult. Thus, there was a rational basis for extending security in the form of mortgages and the right to foreclose to certain parties which might finance housing projects but to protect housing authorities from creditors generally.
We note also that § 24-1-41 provides that purchasers at a sale of housing authority property, "whether pursuant to any foreclosure of a mortgage, pursuant to judicial process or otherwise, shall obtain title subject to any contract between the authority and a government relating to the supervision by a government of the operation and maintenance of such property and the construction of improvements thereon." This provision limits the right granted in § 24-1-35 and is in accordance with the apparent intent of § 24-1-40 to protect the operation of housing projects from termination because of financial liabilities incurred by housing authorities.
A further distinction between creditors such as Hamrick and those protected by § 24-1-35 is that the latter are either government agencies supplying public funds or other obligees co-financing with a government. Thus, the protection of the mortgagees and obligees listed in § 24-1-35 is rationally related to the purpose of the Housing Authorities Law both because it helps secure financing for housing projects and because it protects the public interest by insuring that public funds used for such projects may constitute a lien against the property.
Because we find that § 24-1-40 withstands constitutional scrutiny and Hamrick was not entitled to the garnishments and executions sought, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] The motion does not mention the executions, but the order quashing the garnishments and executions recites that the housing authorities had moved the court to quash garnishments and executions. There is no contention that the order to quash the executions is improper for failure to include them in the motion. *Page 1301