[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10239
_____

D.C. Docket No. 1:13-cv-00434-KD-N


WM MOBILE BAY ENVIRONMENTAL CENTER, INC.,

                                        Plaintiff - Counter Defendant - Appellant,

versus

THE CITY OF MOBILE SOLID WASTE AUTHORITY,

                                        Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 26, 2020)

Before WILSON, JILL PRYOR, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This diversity case requires us to determine whether Alabama law permits a judgment creditor to execute on certain real property owned by an Alabama solid waste disposal authority.  Appellant WM Mobile Bay Environmental Center, Inc. ("WM Mobile"), seeks to partially satisfy its multi-million-dollar judgment against Appellee the City of Mobile Solid Waste Authority (the "Authority") by executing on real property owned by the Authority that WM Mobile claims has never been used for waste disposal purposes.  The parties dispute whether such property is exempt from execution under section 6-10-10 of the Alabama Code or, alternatively, Alabama common law.  However, Alabama law is not clear on how we should treat property owned by a solid waste disposal authority, with case law supporting each party's arguments.

The issues in this appeal are based solely on Alabama statutory and common law.  Principles of comity and federalism instruct us that "[b]ecause the only authoritative voice on Alabama law is the Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law." *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997).  We therefore respectfully certify the issues of Alabama law discussed below to the highest court of that state, and if the Alabama Supreme Court accepts our request, its determination will be dispositive.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

WM Mobile brought this action in federal court against the Authority, alleging that the Authority breached various provisions of a contract between WM Mobile and the Authority for the operation of a landfill (the "Landfill") owned by the Authority. After a jury trial, WM Mobile obtained a judgment against the Authority totaling $6,034,045.50. This Court affirmed that judgment in *WM Mobile Bay Environmental Center, Inc. v. City of Mobile Solid Waste Authority*, 672 F. App'x 931 (11th Cir. 2016).

To partially satisfy its judgment,[1] WM Mobile applied to the district court for a writ of execution against a 104-acre parcel of land (the "West Tract") owned by the Authority that sits adjacent to the Landfill. The Authority purchased the West Tract in 1994 and it "has been held by the [Authority] for expansion of the Chastang Landfill if needed. The expansion has been discussed but has not been needed to date."

The Authority moved to quash WM Mobile's request for a writ of execution, asserting, among other things, that Alabama law prohibits execution on the West Tract because that land is owned by the Authority for public use. The Authority emphasized its role as a public corporation, its purpose and limited rights under the

---

[1] At the time it moved for the writ of execution, WM Mobile claimed $5,308,640.23 outstanding on its judgment, having recovered about $725,000 by withholding royalty payments otherwise due to the Authority under their contract. The Authority disputes the amount withheld by WM Mobile and claims that WM Mobile has underreported its revenue.

3

statutes authorizing its creation, and its relationship with the City of Mobile (the "City"). The Authority argued that its property is held for public use and should be considered, for debt collection purposes, that of the City. Thus, the Authority argued, the West Tract was exempt from execution under Alabama common law and section 6-10-10 of the Alabama Code, which prohibits execution on property "belonging to the several counties or municipal corporations in this state and used for county or municipal purposes."

The district court agreed with the Authority and granted its motion to quash. After first rejecting the Authority's other arguments, the district court found that the West Tract "belongs" to the City and is used for municipal purposes, as required by section 6-10-10. The district court relied on the "longstanding principle [in Alabama] that public property is exempt" and discussed cases describing the role of, and certain protections afforded to, certain public corporations. The district court found that these principles are codified in section 6-10-10 and held that the West Tract is protected from execution under that provision. This appeal ensued.

## II.    ANALYSIS

On appeal, WM Mobile argues that the district court erred by finding that the West Tract was exempt from execution because Alabama's statutory and common law exemptions apply only to property owned by counties or municipalities, not public corporations. The Authority counters that, because of the close connection

4

between the Authority and the City and the statutory purpose of the Authority, the West Tract should be deemed to be owned by the City for purposes of § 6-10-10. The Authority further argues that, regardless of whether the West Tract is owned by the City, the common law exemption protects the West Tract from execution because it is used for a public purpose.

The parties also dispute whether the West Tract is used for public purposes. WM Mobile argues that neither section 6-10-10 nor the common law exemption to execution applies because the Authority, which has owned the West Tract since 1994, is simply holding the West Tract for *possible* expansion of the Landfill. The Authority, in turn, argues that it is statutorily restricted to holding the West Tract for future public purposes and that temporary non-use is insufficient to negate the statutory and common law exemptions.

### 1. The statutory relationship between the Authority and the City

Both parties rely on the role of the Authority and its relationship to the City, which we summarize below, to support their respective arguments. The Authority is a public corporation created by the City and authorized by Chapter 89A of the Alabama Code. The Alabama Legislature, through Chapter 89A, declared the "need for planning, research, development, and innovation in the design, management, and operation of facilities for solid waste management" and concluded with the need for the creation of "authorities which will have the power to issue and sell bonds and

5

notes . . . to acquire and construct such facilities." Ala. Code § 11-89A-1. These authorities are organized as public corporations. *Id.* §§ 11-89A-3, 11-89A-4(d).

To incorporate a solid waste disposal authority, at least three qualified electors of a county or municipality must file an application with the governing body of their county or municipality. *Id.* § 11-89A-3. The governing body of the county or municipality must then review the electors' application and adopt a resolution either denying the application or declaring the need for the requested authority and authorizing the electors to file incorporation documents for the authority. *Id.* Once incorporated, the authority can acquire facilities for waste disposal and enter into contracts to accomplish its statutory purpose. *See id.* § 11-89A-8(a)(5), (12). It can also "borrow money," "assume obligations secured by a lien" on its facilities, and "sue and be sued in its own name." *See id.* § 11-89A-8(a)(2), (6), (11).

The Authority's ability to borrow money and issue bonds is significant. The Alabama constitution prohibits the legislature from authorizing "any county, city, town, or other subdivision of this state to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, . . . by issuing bonds or otherwise." Ala. Const. art. IV, § 94(a). Statutorily authorized public corporations, however, are not subject to this constitutional restriction because they are "[s]eparate, independent public corporations[,] . . . not subdivisions of the State within the meaning of Section 94 of the [Alabama]

Constitution." *Knight v. W. Ala. Envtl. Improvement Auth.*, 246 So. 2d 903, 907

(Ala. 1971).  As recognized by the Alabama Supreme Court:

> Public corporations were initially authorized by the Legislature as a means for municipalities to finance improvements to their utilities infrastructure without running afoul of constitutional and statutory debt limitations, as well as to shield municipalities from the large financial obligations that often accompany such utilities projects.

*Water Works & Sewer Bd. of Talladega v. Consol. Publ'g, Inc.*, 892 So. 2d 859, 861

(Ala. 2004).

Nonetheless, a public corporation is not completely separate from the county

or municipality that authorizes it, and, in some ways, the role played by the local

government is analogous to a shareholder of a public corporation.  For example, the

City is the Authority's "determining municipality" because it authorized the creation

of the Authority.  *See* Ala. Code §§ 11-89A-2(9), 11-89A-3.  The Authority's board

of directors is elected by the City's governing body, and the City must approve any

amendments to the Authority's articles of incorporation.  *See id.* §§ 11-89A-5, 11-

89A-6.  In the event the Authority is dissolved, title to its property will vest in the

City.  *See id.* § 11-89A-21.  Moreover, any net earnings generated by the Authority,

if any, are paid over to the City because the Authority must operate as a nonprofit

corporation.  *See id.* § 11-89A-19.  Additionally, by statute, the Authority shares

certain characteristics with the City.  For example, the Authority has the power of

eminent domain, *see id.* § 11-89A-14, its directors can be removed only via the same

7

impeachment process used to remove municipal officials, *see id.* § 11-89A-6(d), and the Authority is required to include "City of Mobile" in its corporate name, *see id.* § 11-89A-4(b)(4).

## 2. Statutory exemption from execution

In light of the statutory relationship between the Authority and the City, we first consider section 6-10-10's exemption from execution.

### a. Section 6-10-10 of the Alabama Code

Alabama law permits a judgment creditor to obtain a writ of execution against "the lands and goods of the party against whom such judgment is entered." Ala. Code § 6-9-1; *see also id.* §§ 6-9-20 to -27 (establishing the process for issuance of writs). Generally, judgment creditors may execute against "real property to which the defendant has a legal title . . . or in which he has a vested legal interest in possession, reversion, or remainder, whether he has the entire estate or is entitled to it in common with others." *Id.* § 6-9-40(1). Under section 6-10-10, however, "[a]ll property, real or personal, belonging to the several counties or municipal corporations in this state and used for county or municipal purposes shall be exempt from levy and sale under any process or judgment whatsoever."

To claim an exemption under section 6-10-10, a judgment debtor must therefore show that the property subject to execution "belong[s] to" a county or municipality and is "used for county or municipal purposes." The parties agree that

8

the Authority owns the West Tract and that the Authority is a public corporation—

not a municipal corporation—separate from the City.  The issues then are whether

the West Tract belongs to the City, even though it is owned by the Authority, and

whether the West Tract is being used for county or municipal purposes.

b.  Does the West Tract belong to the City?

Alabama's statutes do not define the phrase "belonging to" as used in section

6-10-10.  Under Alabama law,[2] courts must first look to the language of the statute.

*Lane v. State*, 66 So. 3d 824, 827–28 (Ala. 2010).  If the statutory language is

unambiguous based on its plain and ordinary meaning, courts may not engage in

judicial construction.  *Id.* at 828.  But when Alabama courts must construe a statute,

the text of the statute must be given its ordinary and commonly understood meaning.

*Id.*  Applying these rules of statutory interpretation, the phrase "belonging to" refers

to ownership of property.  *See Belong*, *Black's Law Dictionary* (11th ed. 2019) ("To

---

[2] In this diversity case involving Alabama substantive law, we must decide the scope of section 6-10-10 "the way it appears the state's highest court would." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (quoting *Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001)).  We therefore employ Alabama's rules on statutory interpretation.  *See Belanger v. Salvation Army*, 556 F.3d 1153, 1155–57 (11th Cir. 2009) (applying Florida's statutory interpretation rules when construing a Florida statute); *Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 338–41 (11th Cir. 1989) (same).  Nonetheless, the Alabama interpretation principles used in this case are consistent with our framework for construing statutes.  *See, e.g.*, *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1187–88 (11th Cir. 2018) (noting that we must start with the "language of the statute itself" and, if the language has a plain and unambiguous meaning, "the inquiry is over").

be the property of a person or thing.").  Thus, the plain language of the statute limits the phrase "belongs to" to the legal ownership of the West Tract.

As pointed out by WM Mobile, Alabama case law provides ample support for the proposition that public corporations and their property are separate from the municipalities or counties that created them.  *See, e.g.*, *Water Works & Sewer Bd. of Selma v. Randolph*, 833 So. 2d 604, 607–08 (Ala. 2002) (finding that public funds distributed by a water works board—a type of public corporation—were not "funds belonging to the state, county or municipality" and, therefore, the board was not subject to Alabama's Sunshine Law); *George A. Fuller Co. v. Vulcan Materials Co., Se. Div.*, 301 So. 2d 74, 76 (Ala. 1974) (finding that, while public corporations may enjoy certain immunities from taxation, they are separate from the political subdivision that established them and, therefore, Alabama's public bonding statute was inapplicable); *Knight*, 246 So. 2d at 906–07 (holding that public corporations are not subject to Alabama's constitutional restriction on local government borrowing because they are "[s]eparate, independent public corporations[,] . . . not subdivisions of the State within the meaning of Section 94 of the Constitution"); *In re Opinion of the Justices*, 49 So. 2d 175, 180 (Ala. 1950) ("It is well established by the decisions of this court that a public corporation is a separate entity from the state and from any local political subdivision, including a city or county, within which it is organized.").  This case law underscores the conclusion that the statute's plain

10

language would prevent the Authority from taking advantage of section 6-10-10's exemption from execution.

As pointed out by the Authority, however, there is a separate line of Alabama cases that has treated public corporations and their property as if the public corporations were part of the relevant municipality or county. *See, e.g.*, *Water Works & Sewer Bd. of Talladega*, 892 So. 2d at 861–63 (finding that a water works board "perform[ed] a municipal function" and, therefore, its writings were "public writings" subject to disclosure under Alabama's Open Records Act); *In re Opinion of the Justices*, 179 So. 535, 536 (Ala. 1938) (concluding that housing authorities are exempt from ad valorem taxation because the authorities are administrative agencies of the municipalities and their "property is therefore for certain purposes that of a municipal corporation"). In this context, the Authority's statutory purpose of providing solid waste disposal for the City, its structural relationship with the City, and its similarities with certain aspects of state subdivisions become relevant. *See supra* Part II.1.

The Alabama Supreme Court addressed a related issue in a pair of decisions involving a judgment creditor's attempt to collect a judgment entered against some municipal housing authorities: *Hamrick Construction Corp. v. Rainsville Housing Authority* (*Hamrick I*), 447 So. 2d 1295 (Ala. 1984), and *Rainsville Housing Authority v. Hamrick Construction Corp.* (*Hamrick II*), 456 So. 2d 38 (Ala. 1984).

11

Like the Authority, municipal housing authorities are public corporations. *See* Ala. Code § 24-1-22(1). Municipal housing authorities, however, are organized pursuant to § 24-1-23 of the Alabama Code, and, as discussed below, the statutory language relating to municipal housing authorities materially differs from the statutory language relating to solid waste authorities.

In *Hamrick I*, the Alabama Supreme Court affirmed a trial court order quashing, pursuant to section 24-1-40 of the Alabama Code, writs of garnishment issued against the municipal housing authorities' funds. 447 So. 2d at 1296–97, 1300. Section 24-1-40 provides, in relevant part, that a municipal housing authority's property "shall be exempt from levy and sale by virtue of an execution, or other process, to the same extent as now enjoyed by the properties of towns, cities, and counties of Alabama." The Alabama Supreme Court therefore looked to section 6-10-10 to determine the extent of the exemption enjoyed by the housing authorities. *See Hamrick I*, 447 So. 2d at 1296–97. In seeking to avoid application of the exemption, the judgment creditor argued that the municipal housing authorities' property was not being used for public purposes but instead was being used for private housing. *Id.* at 1297. In addressing this argument, the Alabama Supreme Court noted the statutory limits placed on the municipal housing authorities' use of their property and explained that, in a previous case involving a county housing authority, "the parties and the Court took for granted that the defendant's 'property

for certain purposes is that of a municipal (county) corporation,' and did not question the applicability of the parallel exemption of county housing authority property." *Id.* (quoting *Rayborn v. Hous. Auth. of Washington Cnty.*, 164 So. 2d 494, 495 (Ala. 1964)). The Alabama Supreme Court therefore concluded that the municipal housing authorities' property was devoted to "public use" and was protected under section 24-1-40. *See id.*

In *Hamrick II*, the Alabama Supreme Court subsequently was presented with the question of whether the officers of the municipal housing authorities could be subject to a writ of mandamus directing payment of the judgment. 456 So. 2d at 39. Under Alabama law, "mandamus may lie against municipal officials to compel payment of a judgment against the city," but the housing authorities argued that they were not "a municipal corporation nor an arm or a subdivision thereof" and that, therefore, their officers could not be subject to mandamus. *Id.* at 38–39. The Alabama Supreme Court found that fact to be non-dispositive, noting that the legislative act authorizing municipal housing authorities declared that such an authority constitutes "a public body and a body corporate and politic exercising public powers," *id.* at 39 (quoting Ala. Code § 24-1-27(a)), and—again—that a housing authority's "property for certain purposes is that of a municipal (county) corporation," *id.* (quoting *Rayborn*, 164 So. 2d at 495). Thus, the officers of the

13

municipal housing authorities were deemed public officials subject to mandamus. *See id.*

Although the *Hamrick* cases set forth a clear rule relating to municipal housing authorities—their property is exempt from execution, but their officers are subject to mandamus—those cases are not dispositive of the case before us. The Alabama Code does not expressly provide solid waste disposal authorities protection from execution—as it does for municipal housing authorities through section 24-1-40. Indeed, *Hamrick I* discussed section 6-10-10 not because property owned by municipal housing authorities inherently "belongs to" the relevant municipality, but because section 24-1-40 expressly incorporates section 6-10-10's requirements in order to determine the scope of section 24-1-40's statutory exemption from execution. *See* 447 So. 2d at 1296–97. Similarly, in *Hamrick II*, the court relied on the legislative declaration that a municipal housing authority "shall constitute a public body and a body corporate and politic exercising public powers" to find that municipal housing authority officials should be treated as public officials for mandamus purposes. *See* 456 So. 2d at 39 (quoting Ala. Code § 24-1-27(a)). No such legislative declaration or broad grant of powers exists for solid waste disposal authorities. *See* Ala. Code 11-89A-8. The statutory differences between municipal housing authorities and solid waste disposal authorities therefore suggest that we should not apply the reasoning in the *Hamrick* cases here. *See State v. Dean*, 940

14

So. 2d 1077, 1080 (Ala. Crim. App. 2006) (explaining that the legislature knows how to effectuate its intent through legislation and courts should not interpret statutes to compensate for perceived omissions); *see also 84 Lumber Co. v. City of Northport*, 250 So. 3d 567, 575 (Ala. Civ. App. 2017) ("[I]f no exceptions to the positive terms of a general statute are made, the conclusive presumption is that the legislature intended none, and the duty of the court is to interpret law not make law by engrafting exceptions upon statutes." (quoting *City of Birmingham v. Weston*, 172 So. 643, 646 (Ala. 1937))).

Still, in both *Hamrick I* and *Hamrick II*, the Alabama Supreme Court noted that a public corporation's property may be "for certain purposes . . . that of a municipal (county) corporation." *Hamrick I*, 447 So. 2d at 1297; *accord Hamrick II*, 456 So. 2d at 39. That statement is consistent with *Water Works & Sewer Board of Talladega* and *In re Opinion of Justices (1938)*, but appears to be in tension with the rules articulated in *Water Works & Sewer Bd. of Selma*, *George A. Fuller Co.*, and *In re Opinion of Justices (1950)*. Additionally, we have not been able to discern from the former group of cases the factors that a trial court should consider when determining the "certain purposes" for which a public corporation's property is deemed "that of a municipal (county) corporation."

c.  Is the West Tract "used for . . . municipal purposes"?

15

Even if section 6-10-10 applies to property owned by solid waste disposal authorities, we are faced with another unsettled question of Alabama law: whether an authority's property is "used for county or municipal purposes" when it lays unused for many years but its use is statutorily restricted. *See* Ala. Code § 6-10-10.

Pursuant to section 6-10-10, if property owned by a city or municipality is not used for public purposes, it may be seized and sold. *See Hamrick I*, 447 So. 2d at 1297 ("This Court has applied this statute and held that City property not used for public purposes may be seized and sold."). In *Russell & Johnson v. Town of Oneonta*, 73 So. 986 (Ala. 1917), the Alabama Supreme Court noted that municipal property does not lose its public purpose merely because "for some short period the city did not have occasion to use all thereof, or that there was a temporary use of same for private purposes." *Id.* at 987. However, where property is owned by a municipality but there is no evidence supporting its purported use for municipal or county purposes, the property cannot be considered used for county or municipal purposes. *Murphree v. City of Mobile*, 16 So. 544, 544–45 (Ala. 1894). In *Murphree*, the Alabama Supreme Court found that a piece of land owned by a city was not exempt under the predecessor to section 6-10-10 because the city never designated the land for its purported purpose—a public burial ground—and, despite owning the property for over twenty-five years, no body had been buried there nor was the property recognized as a burial ground. *Id.* In making its decision, the

16

Alabama Supreme Court found it unnecessary to consider conflicting testimony regarding the suitability of the property for burial purposes or how long it would take for the city to need to expand its current cemetery. *See id.* at 545. "The question is whether, under the statute, the property was exempt at the time of the levy of the execution." *Id.*

Here, the Authority purchased the West Tract in 1994, and states that the property is held "for expansion of the [Landfill] if needed. The expansion has been discussed, but has not been needed to date." Thus, like the property at issue in *Murphree* and unlike the property at issue in *Russell & Johnson*, the West Tract is not undergoing a temporary period of non-use, but instead has been sitting unused for over twenty-five years. However, unlike a county or a municipality, which can assign various uses to the property it owns, the Authority exists and operates for a specific statutory purpose, and the Authority's ability to acquire, use, and dispose of real property is restricted by that statutory purpose and grant of authority. *See, e.g.*, Ala. Code §§ 11-89A-1, 11-89A-8(a)(5), (8), (12).

This issue brings us back to *Hamrick I*, where the Alabama Supreme Court considered whether property owned by municipal housing authorities was used for a municipal purpose. *See* 447 So. 2d at 1296–98. Focusing on the statutory language authorizing municipal housing authorities, the Alabama Supreme Court concluded that "[t]he whole tenor of the Housing Authorities Law thus indicates a legislative

17

finding that the use of property for the purposes set out in that Law is public use." *Id.* at 1297. Because there was no dispute that the authorities "use[d] any of their property in a manner other than as allowed by statute," the court found that "public housing projects are a 'public use' within the meaning of the municipal exemption" for housing authority property. *Id.*

*Hamrick I* thus seems to suggest that the West Tract is used for a public purpose because the Authority is statutorily restricted from doing anything with the property other than hold it for future use in connection with the Authority's solid waste disposal operations. We are concerned, however, that applying *Hamrick I* in this context may extend its rule beyond where Alabama law would otherwise go. First, the properties at issue in *Hamrick I* were being used, not lying fallow for a significant period of time like the West Tract and the property at issue in *Murphree*. Although *Murphree* could be distinguished because it dealt with a municipality, not a public corporation, the statutory scheme governing housing authorities differs in significant ways from the statutory scheme applicable to solid waste authorities, and, therefore, it may be inappropriate to apply *Hamrick I* to public corporations other than housing authorities. For example, applying *Hamrick I* to all public corporations could neuter section 6-10-10's "use" requirement and reduce consideration under that statute to solely its "belonging to" requirement. Simply put, we have not

18

discerned controlling Alabama legal authority on how to apply section 6-10-10's "use" requirement to solid waste disposal authorities.

### 3.  Common law exemption from execution

In its order, the district court noted that section 6-10-10 is the codification of the "longstanding principle" in Alabama law that property used for public purposes is exempt from execution and garnishment.  As noted in our discussion above, section 6-10-10 applies only to property belonging to municipalities or counties that is used for public purposes.  On appeal, the parties disagree about whether Alabama common law provides an additional exemption for the public use of property and, if so, whether that exemption applies to property owned by individuals or entities other than municipalities or counties.  As discussed below, it appears that Alabama courts have not directly applied a common law public use exemption for more than a century and only as it applied to property owned by railroad companies.

To establish a common law public use exemption applicable to property owned by private corporations, the Authority relies on the following excerpt from *Gardner v. Mobile & N.W.R. Co.*, 15 So. 271 (Ala. 1894):

> As a general rule, the property of all private corporations is as subject to legal process for the satisfaction of debts as is the property of natural persons.  An exception obtains, however, when the corporation is created to serve public purposes, charged with public duties, and is in the exercise of its franchise and in the performance of its duties.  Then, on considerations of public policy, without regard to the nature or quality of the estate or interest of the corporation, according to the weight of authority, such property as is necessary to enable it to

19

discharge its duties to the public and effectuate the objects of its incorporation is not subject to execution at law. The only remedy of a judgment creditor is to obtain the appointment of a receiver, and the sequestration of its income or earnings.

*Id.* at 273–74. *Gardner*, however, seems to reflect a line of Alabama cases that have not been extended beyond the context of railroad rights of way. *See, e.g.*, *Tucker v. Mobile Infirmary Ass'n*, 68 So. 4, 17 (Ala. 1915) (Mayfield, J., dissenting) ("Though a judgment is rendered against a railway company, yet its franchise or other property necessary to the operation of its road cannot be sold under execution, because that would interfere with the public good." (quoting *Fordyce & McKee v. Woman's Christian Nat'l Library Ass'n*, 96 S.W. 155, 161 (Ark. 1906)); *City of Decatur v. S. Ry. Co.*, 62 So. 855, 857 (Ala. 1913) ("[W]hat has been said on the subject of [judicial] sales of a part of a railroad right of way clearly indicates that it has always been the opinion, if not the decision, of this court that such sales were unwarranted and against public policy.").

Moreover, it is unclear whether the common law rule articulated in *Gardner* and related cases maintains vitality or whether it has been legislatively abrogated by the comprehensive statutory scheme in chapter 10 of title 6 of the Alabama Code, which contains the exemptions to levy and garnishment enacted by the Alabama legislature. This is particularly important in light of Alabama law's prohibition on "engraft[ing] exceptions, which are not found in the statutes." *Elliott v. Navistar, Inc.*, 65 So. 3d 379, 384 (Ala. 2010) (quoting *Barclay v. Smith*, 66 Ala. 230, 232

(1880)).  And while Alabama law requires courts to give a liberal construction to exemption statutes, *see Russell & Johnson*, 73 So. at 986, it does not permit courts to "give the statutes a liberality of construction far beyond their letter and spirit," *Griffin v. Ayers*, 165 So. 593, 596 (Ala. 1936). *See also Phillips v. Phillips*, 44 So. 391, 392 (Ala. 1907) (noting that courts may not give exemption statutes a liberal construction that would be "inconsistent with the manifest intention of the lawmakers").  Accordingly, we are left without clear direction on both the scope of the rule in *Gardner* and its continued viability.

This Court may in few and restricted circumstances develop the judicially created federal common law, *see City of Milwaukee v. Illinois*, 451 U.S. 304, 312–14 (1981), but a judicial decision that expands, eliminates, or does something in between regarding Alabama's common law public use exemption, as reflected in *Gardner*, is ultimately the prerogative of the Alabama Supreme Court.  We owe deference to the Alabama Supreme Court on this issue because only it decides how to definitively construe its prior precedent.  *Compare Smith v. United Constr. Workers, Dist. 50*, 122 So. 2d 153, 154 (Ala. 1960) ("We are compelled to follow the common law on any subject when the same has not been changed by the legislative branch of our government."), *with Swartz v. U.S. Steel Corp.*, 304 So. 2d 881, 885–86 (Ala. 1974) ("We therefore conclude that continuing adherence to the doctrine announced in *Smith*, supra, is not today required or desirable under stare

21

decisis, nor do we feel that we should longer await legislative action to bring our common law into harmony with the realities of today."). Moreover, Alabama courts occupy the best position to determine the relationship between Alabama's common law rules and its statutes, such as section 6-10-10. *See Ivey v. Wiggins*, 159 So. 2d 618, 620 (Ala. 1964) ("Legislative enactments in modification of the common law should be clear and such as to prevent reasonable doubt as to the legislative intent and of the limits of such change.").

### 4. Certification of these issues to the Alabama Supreme Court is appropriate

Although the facts of this case involve a single judgment creditor, the legal principles involved may have broad effects on the citizens of Alabama, their public corporations, and the companies that do business with them. Neither party disputes that public corporations perform important functions for the people of Alabama. Permitting execution against the property of these public corporations may interfere with those functions. Conversely, insulating property owned by public corporations from collection efforts might lead to a decrease in those choosing to contract with Alabama's public corporations and to higher amounts charged by those who continue to do so. Or, these risks may already have been anticipated and addressed in existing contracts. In any event, the answer to how the statutory and common law exceptions apply—if at all—is one of Alabama law.

22

When faced with substantial doubt on a dispositive state law issue, our "better option is to certify the question to the state supreme court." *In re Mooney*, 812 F.3d 1276, 1283 (11th Cir. 2016). Thus, as a matter of federalism and comity, dispositive issues of Alabama law should be first presented to the Alabama Supreme Court to decide. *See Blue Cross & Blue Shield of Ala., Inc.*, 116 F.3d at 1413. Indeed, "[c]ertification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism." *Id.*

We therefore certify to the Alabama Supreme Court the following questions under Alabama Rule of Appellate Procedure 18[3]:

(1) Can property owned by a solid waste disposal authority "belong[] to" a county or municipality for purposes of section 6-10-10?

(2) If so, what factors should courts consider when making such a determination?

(3) If section 6-10-10 can apply to property owned by a solid waste disposal authority, is such property "used for county or municipal purposes" when the authority has not used the property but is holding it for a future use?

(4) Does Alabama continue to recognize a common law exemption from execution for property used for public purposes as described in *Gardner v. Mobile & N.W.R. Co.*, 15 So. 271 (Ala. 1894)?

(5) If so, does that exemption apply to public corporations like the Authority, and what standards should courts employ in applying this common law exemption?

---

[3] Rule 18 permits federal courts to certify questions to the Alabama Supreme Court when faced with "questions or propositions of law of this State which are determinative of said cause and . . . there are no clear controlling precedents in the decisions of the Supreme Court of this State." Ala. R. App. P. 18(a). The Alabama Supreme Court "may answer" these certified questions by written opinion. *Id.*

23

Our phrasing of these questions "is intended only as a guide." *United States v. Clarke*, 780 F.3d 1131, 1133 (11th Cir. 2015). We do not mean to restrict the Alabama Supreme Court's consideration of the issues or its scope of inquiry. *See Blue Cross & Blue Shield of Ala.*, 116 F.3d at 1414. The Alabama Supreme Court may, as it perceives them, restate the issues and modify the manner in which the answers are given. *Id.* "[I]f we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed, we hope the Alabama Supreme Court will feel free to make the necessary corrections." *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1312 (11th Cir. 2000). Finally, should the Alabama Supreme Court exercise its discretion to answer these questions, its response will be "conclusive on the issue[s] certified." *Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943, 945 (11th Cir. 2009).

## III.    CONCLUSION

For the foregoing reasons, we defer our decision in this case until the Alabama Supreme Court has had the opportunity to consider our certified questions and determine whether to exercise its discretion in answering them. The entire record of this case, including the parties' briefs, is transmitted to the Alabama Supreme Court.

**QUESTIONS CERTIFIED.**