[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14589

_____

D.C. Docket No. 1:18-cv-23569-KMW

DAVID S. PARESKY,
LINDA K. PARESKY,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 30, 2021)

Before LAGOA, HULL, and MARCUS, Circuit Judges.

LAGOA, Circuit Judge:

David Paresky and Linda Paresky appeal the district court's order dismissing their amended complaint for lack of subject matter jurisdiction over their standalone claim for overpayment interest allegedly owed to them by the government. This appeal presents a matter of first impression within our Circuit and asks this Court to determine whether 28 U.S.C. § 1346(a)(1) confers jurisdiction, concurrent with the United States Court of Federal Claims, over a taxpayer's civil action against the government solely for overpayment interest owed to the taxpayer. Because we find that the statutory language of § 1346(a)(1) does not confer such jurisdiction, we affirm the district court's dismissal of the Pareskys' amended complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the amended complaint, the Pareskys are victims of Bernie Madoff's Ponzi scheme and "paid millions of dollars in taxes on income that they later learned was fictitious." In an attempt to partially recoup their losses, the Pareskys filed multiple claims with the Internal Revenue Service ("IRS") in late 2009 to recover taxes that were overpaid for the tax years of 2003, 2004, 2005, 2006, and 2007. Specifically, they filed amended returns for tax years 2005 through 2007, seeking refunds for taxes overpaid on income in those years, and they filed a Form 1045 seeking separate refunds arising from a carryback of the Madoff theft losses from 2008 to be applied to the tax years of 2003 through 2007. The IRS received the Form 1045 on January 4, 2010. On March 3, 2010, the IRS sent the Pareskys a

2

letter rejecting their Form 1045. The Pareskys' accountant then sent the IRS a response letter, which the IRS agreed with and accepted. On April 2, 2010, the IRS requested Forms 6251 for several of the Pareskys tax years, which their accountant supplied on the same date.

The Pareskys received tentative refunds of approximately ten million dollars for tax years 2003 through 2007 in April and May 2010. The Pareskys, however, asserted that they were also entitled to interest on the tax overpayments, claiming that the IRS had exceeded the statutory forty-five-day limitations period in Internal Revenue Code ("I.R.C.") § 6611(e)(2) to process and issue them tentative refunds for each tax year. They pursued their overpayment interest claim with the IRS, which issued the Pareskys a September 4, 2014, letter determining that they were not entitled to any additional interest. The Pareskys filed a formal claim against the IRS on September 10, 2014, and the IRS issued a formal claim denial letter on September 24, 2015. The denial letter stated that they could file suit within two years after the mailing of the denial letter.

Almost two years later, on September 15, 2017, the Pareskys filed a complaint in the Court of Federal Claims, asserting that the government owed them overpayment interest for the tax years at issue. On December 29, 2017, the government moved to dismiss the complaint for lack of subject matter jurisdiction. In its motion, the government argued that the Pareskys' claim was governed by the

3

Tucker Act, which provides that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress," 28 U.S.C. § 1491, and that the Pareskys had failed to file their complaint within the six-year limitations period for claims under the Tucker Act, *see id.* § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."), as they waited approximately seven years and four months to file their complaint.[1]  The Pareskys opposed the motion to dismiss and, alternatively, moved to transfer the case.

The Court of Federal Claims denied the government's motion to dismiss as moot after finding that it lacked jurisdiction over the Pareskys' claim because it was untimely under the Tucker Act.  The Court of Federal Claims, however, transferred the case to the Southern District of Florida because it was not evident how the Southern District of Florida or this Court would address jurisdiction over a standalone claim for overpayment interest.

Following the transfer of the case, the Pareskys filed an amended complaint seeking $535,595.95 in overpayment interest from the government, alleging that the

---

[1] We note that the IRS's September 24, 2015, formal denial letter was issued months before the expiration of the six-year deadline for filing a claim under the Tucker Act, and the Pareskys therefore had an opportunity to file their claim against the government within the Tucker Act's statutory limitations period.  *See* 28 U.S.C. § 2501.

district court had jurisdiction over their overpayment interest claim pursuant to 28 U.S.C. §§ 1346 and 1491. The government moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked jurisdiction over standalone overpayment interest claims of more than $10,000, or, alternatively, that even if the district court had jurisdiction, the Pareskys had failed to timely file administrative claims for all the tax years at issue except for 2007. The Pareskys opposed the motion, asserting that the district court had jurisdiction over standalone overpayment interest claims under § 1346(a)(1), that the government was equitably estopped from challenging the timeliness of their administrative claims, and that their claims were timely.

The district court referred the government's motion to dismiss to a magistrate judge, who issued a Report and Recommendation recommending that the government's motion be granted in part. The magistrate judge concluded that the district court had jurisdiction over a claim for overpayment interest pursuant to § 1346(a)(1), principally relying on the Sixth Circuit's decision in *E.W. Scripps Co. & Subsidiaries v. United States*, 420 F.3d 589, 593 (6th Cir. 2015), which determined that the statutory language of § 1346(a)(1) encompassed such standalone overpayment interest claims. Because the Pareskys had not timely filed administrative claims with the IRS for the tax years 2003 through 2006, however,

5

the magistrate judge recommended the overpayment interest claim as to those tax years be dismissed for lack of subject matter jurisdiction.

After the parties filed separate objections to the magistrate judge's Report and Recommendation, the district court issued an order declining to adopt the Report and Recommendation and dismissing the amended complaint for lack of subject matter jurisdiction.  In its order, the district court explained that, during the objections period, the Second Circuit issued its decision in *Pfizer Inc. v. United States*, 939 F.3d 173 (2d Cir. 2019), which disagreed with the Sixth Circuit's analysis in *Scripps*, including its reliance on *Flora v. United States*, 362 U.S. 145 (1960), and concluded that § 1346(a)(1) did not confer jurisdiction to district courts over standalone overpayment interest claims.  The district court found *Pfizer*'s analysis to be "more reasoned and persuasive," as *Scripps* relied on "an arguably strained reading of [§] 1346(a)(1) and an overbroad reading of dicta in *Flora* to permit a taxpayer to recover a sum that it never paid to the [g]overnment."

The Pareskys moved for reconsideration of the district court's order and also filed their notice of appeal with this Court.  We held the notice of appeal in abeyance pending the district court's ruling on the Pareskys' reconsideration motion.  The district court subsequently denied the motion for reconsideration and entered final judgment for the government.  This timely appeal ensued.

## II.    STANDARD OF REVIEW

"In reviewing a district court's dismissal of a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, we review the district court's legal conclusions *de novo*." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

## III.    ANALYSIS

On appeal, the Pareskys argue that the district court erred in dismissing their amended complaint for lack of subject matter jurisdiction. The Pareskys contend that the plain language of 28 U.S.C. § 1346(a)(1) confers jurisdiction to district courts over standalone overpayment interest claims and urge this Court to adopt the reasoning of the Sixth Circuit in *Scripps*. In response, the government asserts that the district court correctly relied on the Second Circuit's analysis in *Pfizer*, which was subsequently adopted by the Federal Circuit in *Bank of America Corp. v. United States*, 964 F.3d 1099 (Fed. Cir. 2020).

Because the issue before us involves a question of statutory interpretation, "we begin 'where all such inquiries must begin: with the language of the statute itself,' giving 'effect to the plain terms of the statute.'" *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1297 (11th Cir. 2021) (quoting *In re Valone*, 784 F.3d 1398, 1402 (11th Cir. 2015)). "[T]o determine 'the plain meaning of the statute,'" we consider "the 'particular statutory language at issue'" as well as "the language and design of the statute as a whole." *Wachovia Bank, N.A. v. United*

7

*States*, 455 F.3d 1261, 1267–68 (11th Cir. 2006) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1278 (11th Cir. 2005)). Additionally, "[w]hen examining the plain and ordinary meaning of a statute, 'one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment.'" *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021) (quoting *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016)); *accord Ruiz v. Wing*, 991 F.3d 1130, 1138 (11th Cir. 2021) (explaining that "absent a definition of a term contained in [a statute], we look to the common usage of words for their meaning" and that "[d]ictionary definitions speak to common usage" (quoting *People for Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146–47 (11th Cir. 2018))).

> Section 1346(a)(1) provides:
>
> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . . .

Thus, under the plain language of the statute, for a district court to have concurrent jurisdiction over a standalone overpayment interest claim such as the one asserted by the Pareskys, the claim must be a civil action for the recovery of (1) "any internal revenue tax alleged to have been erroneously or illegally assessed or collected," (2)

8

"any penalty claimed to have been collected without authority," or (3) "any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws." *Id.* If an overpayment interest claim does not fall into one of these categories, then the Court of Federal Claims has exclusive jurisdiction over the claim under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . .").

Internal Revenue Code § 6611 governs overpayment interest on a taxpayer's overpayment of taxes to the government. Section 6611(a) provides that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax" and thus provides a taxpayer "with the necessary substantive waiver of sovereign immunity to allow it to seek overpayment interest from the United States." *See Pfizer*, 939 F.3d at 176. If the taxpayer files a claim for a credit or refund for any overpayment and the government refunds such overpayment within forty-five days of the filing of the claim, however, "no interest shall be allowed on such overpayment." I.R.C. § 6611(e)(2).

As two of our sister circuits have recognized—and the parties do not dispute—a claim for overpayment interest does not fall within either of the first two categories of § 1346(a)(1). *See Pfizer*, 939 F.3d at 176–77; *Bank of Am.*, 964 F.3d at 1104.

9

Internal Revenue Code § 6611 does not define overpayment interest as a tax assessed against or collected from a taxpayer, and overpayment interest is thus not "any internal revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). And this makes sense, since overpayment interest, by its very nature, accrues only *after* a tax has been assessed and collected from a taxpayer, and it is paid by the government to the taxpayer, not vice-versa.[2] Similarly, overpayment interest is clearly not "any penalty" assessed against the taxpayer "claimed to have been collected without authority." *Id.*

Turning to the third category of § 1346(a)(1), in order for a district court to have jurisdiction over an overpayment interest claim, overpayment interest must be "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." On this point, our sister circuits have split, with the Sixth Circuit concluding that overpayment interest falls within the "any sum" category, *see Scripps*, 420 F.3d at 596–98, and the Second and Federal Circuits concluding that it does not, *see Pfizer*, 939 F.3d at 177–79; *Bank of Am.*, 964 F.3d at 1104–05, 1108–09. Because overpayment interest is clearly not "any sum alleged to have been . . . in any manner wrongfully collected," as the government does not

---

[2] We agree with the Second Circuit that "[w]hile overpayment interest is related to the tax refund, it is not itself the subject of an action seeking a tax-related refund," and "[s]imply because the government commits to compensating an overpaying party for the time value of that overpayment, does not render that interest payment a 'tax.'" *Pfizer*, 939 F.3d at 176.

assess and collect overpayment interest from the taxpayer, we must determine whether overpayment interest constitutes "any sum alleged to have been excessive" as used in § 1346(a)(1).

The word "excessive" is defined as "[e]xceeding what is usual; 'surpassing'; exceedingly great," *Excessive*, *Oxford English Dictionary* (2d ed. 1989), or as "exceeding what is usual, proper, necessary, or normal," *Excessive*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1993). Thus, § 1346(a)(1) confers jurisdiction to the district courts over civil actions seeking to recover a sum alleged to have been exceeding "what is usual" or the "usual, proper, necessary, or normal" amount. The statutory use of the term "excessive" assumes that there exists an amount that does *not* exceed the usual, proper, or normal amount and that therefore cannot be recovered from the government. In the context of overpayment interest, however, there is no amount of overpayment interest that would be proper for the government to hold once the taxpayer is entitled to that interest under I.R.C. § 6611. For example, in this case, once the government failed to refund the overpayment within forty-five days of the Pareskys' claim for overpayment of tax, *see* I.R.C. § 6611(e)(2), the Pareskys were entitled to be paid "[i]nterest . . . upon any overpayment in respect of any internal revenue tax" by the government, *see id.* § 6611(a). The statute does not contemplate *any* amount of overpayment interest that may be properly held by the government once the taxpayer becomes entitled to

11

it.   A conclusion that the "any sum" category of § 1346(a)(1) encompasses standalone overpayment interest claims would change the plain and ordinary meaning of the phrase "any sum alleged to have been excessive" to mean "any sum alleged to have been wrongfully held."  We decline to interpret "excessive" contrary to its plain and ordinary meaning in the context of this statute.  *See Ruiz*, 991 F.3d at 1138 ("'[T]he ordinary-meaning rule is the most fundamental semantic rule of interpretation.' . . .   While most words carry more than one dictionary definition, '[o]ne should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise.'" (last alteration in original) (citation omitted) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 69–70 (2012))).

Additionally, the word "sum" used in the phrase "any sum alleged to have been excessive or in any matter wrongfully collected," refers to an amount previously paid to the government by a taxpayer; it therefore does not include overpayment interest.  The common usage of the word "sum" is a "quantity or amount of money." *Sum*, *Oxford English Dictionary* (2d ed. 1989).  When read in isolation, the term "sum" could refer to an amount of money not previously paid by a taxpayer to the government.  When read in the context of § 1346(a)(1) as a whole, however, "sum" refers to an amount of money previously assessed against and collected from the taxpayer.  Specifically, the other two categories of § 1346(a)(1) encompass claims seeking recovery of a "tax" or "penalty"—both of which are

12

unquestionably amounts previously paid by the taxpayer to the government. Thus, in § 1346(a)(1), "sum" finds itself traveling with "tax" and "penalty," and we therefore use the *noscitur a sociis*—"it is known by its associates"—canon of construction to understand the meaning of "sum" as used in the statute. The *noscitur a sociis* canon "is frequently employed where . . . 'a string of statutory terms raises the implication that the words grouped in a list should be given related meaning.'" *Miami Seaquarium*, 879 F.3d at 1147 (quoting *S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 378 (2006)). A more colloquial understanding of the canon's import may be characterized as "birds of a feather flock together." *See Reading Law*, *supra*, at 195. Applying this canon of construction to § 1346(a)(1), "sum" appears in a list of terms that describe amounts previously paid by a taxpayer to the government—a "tax" and a "penalty." Thus, when read in the context of the terms used in the other two categories of § 1346(a)(1), which involve amounts of money assessed, collected, and retained by the government, the statute's "any sum" category likewise refers to an amount of money assessed, collected, and retained by the government. And, as noted above, overpayment interest is not such an amount.

Finally, the verb tense used in the statute—"alleged *to have been* excessive or . . . wrongfully collected"—is the present perfect, which also indicates that the "any sum" category refers to amounts previously paid by a taxpayer. § 1346(a)(1) (emphasis added). The present-perfect tense is formed using "have" or "has" plus

13

the past participle of a verb. "This tense sometimes represents an action as having been completed at some indefinite time in the past . . . [b]ut sometimes, too, the present perfect indicates that an action continues to the present . . . ." Bryan Garner, *Garner's Modern English Usage* 896 (4th ed. 2016). Under either usage—whether fully completed or continuing to the present—the present-perfect tense describes something that occurred in the past. Similar to grouping "sum" with "tax" and "penalty," this statutory language indicates that the amount to be recovered pursuant to § 1346(a)(1) was assessed against and paid by the taxpayer at an earlier point in time. Again, overpayment interest is not such an amount.

Read in context of the entire statute, the "any sum" category of § 1346(a)(1) confers jurisdiction to the district court where a taxpayer seeks to recover an amount of money he or she previously paid to the government that exceeds the usual, proper, or normal amount of such a payment or was wrongfully collected by the government. Overpayment interest does not fall into that category.

The Pareskys, however, ask us to follow the Sixth Circuit's interpretation of the Supreme Court's dicta in *Flora*, which referenced "interest" when discussing § 1346(a)(1). *See Scripps*, 420 F.3d at 596–97. We find *Scripps*'s analysis, including its discussion of *Flora*, unpersuasive. Rather, we agree with the Second and Federal Circuits that *Flora* is inapplicable to the issue here. *See Pfizer*, 939 F.3d at 177–78; *Bank of Am.*, 964 F.3d at 1108–09. When "'[r]ead properly,' the Supreme

14

Court in *Flora* . . . 'plainly had additional tax assessments in view when it mention[ed] 'interest' as a 'sum' under § 1346(a)(1)," as immediately following that language, the Court found it "significant that many old tax statutes described the amount which *was to be assessed* under certain circumstances as a 'sum' to be added to the tax." *Bank of Am.*, 964 F.3d at 1108 (alterations and emphasis in original) (first quoting *Pfizer*, 964 F.3d at 178, then quoting *Flora*, 362 U.S. at 149–50). Indeed, "deficiency interest—not overpayment interest—fits squarely into the types of *assessments* that may be added to a payment that are not strictly a 'penalty' or a 'tax.'" *Pfizer*, 939 F.3d at 178 (emphasis in original). For example, suppose the government may properly assess an amount of underpayment interest against the taxpayer following an underpayment of taxes pursuant to I.R.C. § 6601,[3] but the taxpayer determines that the amount of underpayment interest assessed and paid is too high. After following the administrative process for claims and refunds with the IRS, the taxpayer, under § 1346(a)(1), could bring a claim against the government in federal district court to recover the amount of underpayment interest that the taxpayer alleges to have been excessive.

Accordingly, we conclude that § 1346(a)(1)'s "any sum" category does not encompass standalone overpayment interest claims against the government and that,

---

[3] I.R.C. § 6601 governs interest on underpayments of tax and provides that underpayment interest "shall be assessed, collected, and paid in the same manner as taxes." I.R.C. § 6601(e)(1).

15

under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over such standalone claims exceeding $10,000. *See* 28 U.S.C. §§ 1346(a)(2), 1491. In so doing, we reach the same conclusion as the Second and Federal Circuits. The district court therefore correctly determined that it lacked jurisdiction over the Pareskys' overpayment interest claim and properly dismissed their amended complaint.

## IV.    CONCLUSION

Because the district court lacked jurisdiction over the Pareskys' standalone overpayment interest claim, we affirm the district court's dismissal of the amended complaint.

**AFFIRMED.**