[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11656

_____

KATHLEEN STEELE,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:18-cv-02522-VMC-AEP



Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This case requires us to apply old statutes to new problems. Philip Steele cryopreserved several sperm samples before his death. His surviving wife, Kathleen Steele, relied on those sperm samples and *in vitro* fertilization to conceive a child, P.S.S. She then sought child's insurance benefits ("CIB") under the Social Security Act on behalf of P.S.S. The Social Security Administration (the "Administration") denied the claim for CIB, and the administrative law judge, the magistrate judge, and the district court all upheld the Administration's denial of the claim.

The central issue in this appeal is whether P.S.S. is entitled to recover CIB under the Social Security Act. *See* 42 U.S.C. § 402(d). To answer that question, we must determine whether Florida law authorizes P.S.S. to inherit a child's share of Mr. Steele's intestate personal property, as is required in order to recover CIB. *See id.* § 416(h)(2)(A). The district court, the magistrate judge, and the administrative law judge all concluded no, reasoning that, under Florida Statute § 742.17(4), a child posthumously conceived—like P.S.S.—could inherit property *only* through the decedent's will, and *not* through intestacy, as required to be entitled to CIB.

Because the Florida Supreme Court, which is the final arbiter of Florida law, has not published a decision addressing this

question, principles of comity and federalism suggest that the Florida Supreme Court should decide this issue. *See WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1242 (11th Cir. 2020). We therefore respectfully certify the issues of Florida law discussed below to the Florida Supreme Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Phillip and Kathleen Steele married in August 1997. The couple decided to have children late in life. In 2009, through *in vitro* fertilization, Ms. Steele conceived her first child. The couple decided to have more children, and Mr. Steele, before his death, provided additional sperm samples to the fertility clinic that had assisted the couple with their first child. Using one of those samples after Mr. Steele's death, Ms. Steele again conceived through *in vitro* fertilization. Her second child, P.S.S.—for whom Ms. Steele seeks CIB in this case—was born in March 2013, seventeen months after Mr. Steele's death.

Before his death, Mr. Steele prepared a will through his attorney, Louie Adcock. The will specifically listed his living children, but it also stated, "The terms 'children' and 'lineal descendants' shall include those later born or adopted and whenever used in this instrument shall be equivalent to blood relationship and relationship by adoption."

Shortly after P.S.S.'s birth, Ms. Steele applied for CIB under the Social Security Act on behalf of P.S.S. In support of her application, she attached P.S.S.'s birth certificate, which listed Mr. Steele

as the father. She also submitted letters from Mr. Adcock, who had helped prepare Mr. Steele's will, and Dr. Julio Pabon, who had carried out the *in vitro* procedures. In his letter, Mr. Adcock opined that Mr. Steele's preserving sperm before his death, which was then used by Ms. Steele to conceive P.S.S. after Mr. Steele's death, was "an indication that this was a planned pregnancy," given that Mr. Steele was aware of his age and health and was "devoted" to Ms. Steele. As such, Mr. Adcock stated that he believed Mr. Steele would consider the "pregnancy as being planned." But Mr. Adcock admitted that he did "not recall having had a conversation with [Mr. Steele] about the preservation of sperm." Dr. Pabon, in his letter, stated that Ms. Steele had conceived P.S.S. using Mr. Steele's preserved sperm and that Mr. Steele had "documented his desire for his wife to use the sperm for a future conception even if he were to be incapacitated or deceased."

In February 2014, the Social Security Administration denied the CIB claim. The Administration explained that P.S.S. did "not meet the dependency requirement for benefits" and upheld the denial after Ms. Steele sought reconsideration.

Ms. Steele then sought review of the agency's decision by an administrative law judge, who denied the claim. The administrative law judge explained that, to qualify for CIB, the claimant must be the deceased individual's "child" within the meaning of the Social Security Act, which in turn depended on whether "the claimant could inherit a child's share of the insured individual's intestate personal property under the law of the State in which the insured

20-11656                Opinion of the Court                5

individual was domiciled when he died"—here, Florida.  Applying Florida law, the administrative law judge concluded that P.S.S. could not recover intestate property.  The administrative law judge determined that the relevant Florida statute was section 742.17(4),[1] which provides that a posthumously conceived child "shall not be eligible for a claim against the decedent's estate unless the child has been provided for by the decedent's will."  The administrative law judge concluded that, under section 742.17(4), posthumously conceived children could "only inherit through the person's will," not through intestacy.  The administrative law judge further found that Mr. Steele had not provided for P.S.S. in his will because the will did not "specifically provide for the claimant or otherwise indicate his intent to provide for any child conceived after his death."  The Appeals Council declined Ms. Steele's request for review of the administrative law judge's decision.

Having exhausted her administrative remedies, Steele filed suit in federal court against the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The district court referred the matter to

---

[1] In doing so, the administrative judge law reasoned that, while there was no case law where a Florida court had specifically applied section 742.17 "to determine a child's status for purposes of intestate succession," it was "safe to assume that a Florida court would find [section] 742.17(4) applicable in determining the claimant's intestacy rights," given "Florida precedent recognizing determinations of paternity under some parts of Chapter 742 for the purposes of determining intestacy rights."

a magistrate judge, who issued a report and recommendation that recommended affirming the administrative law judge's decision that upheld the denial of the CIB claim. The magistrate judge agreed with the administrative law judge that P.S.S. "did not qualify as an 'afterborn heir' under Florida intestacy law because he was born seventeen months after the death of Mr. Steele." The magistrate judge also found that the administrative law judge's interpretation of section 742.17(4) was correct in determining that "posthumously conceived children cannot inherit property intestate under Florida law, but rather can only inherit property *through a person's will.*" In doing so, the magistrate judge rejected Steele's argument that section 742.17(4) allowed P.S.S. to inherit under Florida intestacy laws because there was a will—Mr. Steele's—providing for P.S.S. The magistrate judge reasoned that "intestacy, by its nature, is inheriting a decedent[']s estate *absent* the existence of a valid will."

Ms. Steele filed objections to the report and recommendation. The district court overruled her objections and adopted the magistrate judge's report and recommendation. This appeal ensued.

## II.    ANALYSIS

On appeal, Ms. Steele argues that the district court erred in adopting the magistrate judge's report and recommendation and by not granting CIB to P.S.S. Specifically, Ms. Steele contends that the phrase "unless the child has been provided for by the decedent's will" in Florida Statute § 742.17(4) effectively vests such a child

with intestate rights in the event he or she is provided for by the decedent's will.  Relying on this interpretation, Ms. Steele asserts that P.S.S. was provided for in Mr. Steele's will such that P.S.S. is entitled to inherit intestate a share of the personal property of his parent, Mr. Steele, under Florida law.  And, as such, Ms. Steele contends that P.S.S. is considered a "child" within the meaning of the Social Security Act and is entitled to CIB.  In response, the Commissioner contends that the interpretation of the administrative law judge, magistrate judge, and district court is correct—i.e., that, under section 742.17(4), a posthumously conceived child may inherit *only* through the decedent's will, if provided for, and thus not through intestacy.

We first turn to the relevant statutory provisions and case law.  Under the Social Security Act, an applicant qualifies for CIB if he "meets the Act's definition of 'child,' is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death." *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547 (2012); 42 U.S.C. § 402(d).  Title 42 U.S.C. § 416(e) defines "child," in relevant part, as "(1) the child or legally adopted child of an individual, (2) a stepchild [under certain circumstances], and (3) . . . the grandchild or stepgrandchild of an individual or his spouse [who meets certain conditions]." *Astrue*, 566 U.S. at 547.  Additionally, a subsequent definitional provision addresses the term "child." This statute—42 U.S.C. § 416(h)(2)(A)—provides that "[i]n determining whether an applicant is the child or parent of [an] individual

for purposes of this subchapter, the Commissioner of Social Security shall apply [the intestacy law of the insured individual's domiciliary State]." *Astrue*, 566 U.S. at 548 (some alterations in original) (quoting § 416(h)(2)(A)). As the Supreme Court has explained, § 416(h)(2)(A) "completes the definition of 'child' 'for purposes of th[e] subchapter' that includes § 416(e)(1)." *See id.* at 558 (alteration in original) (quoting § 416(h)(2)(A)). Thus, we must determine whether under Florida law P.S.S.—a posthumously conceived child—can inherit Mr. Steele's personal property through intestacy.

Whether posthumously conceived children can inherit through intestacy under Florida law is a question of first impression for this Court. And because the issue before us involves questions of statutory interpretation, "we begin 'where all such inquiries must begin: with the language of the statute itself,' giving 'effect to the plain terms of the statute.'" *Paresky v. United States*, 995 F.3d 1281, 1285 (11th Cir. 2021) (quoting *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1297 (11th Cir. 2021)). In determining the plain meaning of a statute, "we consider 'the "particular statutory language at issue"' as well as 'the language and design of the statute as a whole.'" *Id.* (quoting *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267–68 (11th Cir. 2006)).

Under Florida law, "[a]ny part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs," Fla. Stat. § 732.101(1), which includes "the descendants of the decedent," *id.* § 732.103(1). Under Florida Statute § 731.201(9), a

"descendant" is "synonymous with the terms 'lineal descendant' and 'issue'" and means "a person in any generational level down the applicable individual's descending line and includes children, grandchildren, and more remote descendants." Florida's probate code also contains a section titled, "Afterborn heirs." Fla. Stat. § 732.106. This section states that afterborn heirs are "[h]eirs of the decedent *conceived before his or her death*, but born thereafter," and "inherit intestate property as if they had been born in the decedent's lifetime." *Id.* (emphasis added). As the parties agree, section 732.106 does not apply to P.S.S. because he was conceived *after* Mr. Steele's death.

In addressing this issue, the administrative law judge, magistrate judge, and district court—as well as the parties in their briefs—analyzed section 742.17(4), titled "Disposition of eggs, sperm, or preembryos; rights of inheritance." Section 742.17(4) is not contained in Florida's probate code; rather, it is in Florida's domestic relations laws. Section 742.17(4) provides that "[a] child conceived from the eggs or sperm of a person or persons who died before the transfer of their eggs, sperm, or preembryos to a woman's body shall not be eligible for a claim against the decedent's estate unless the child has been provided for by the decedent's will."

Here, the parties dispute the meaning of the phrase "unless the child has been provided for by the decedent's will" in section 742.17(4). The administrative law judge interpreted section 742.17(4) to provide that a posthumously conceived child cannot

inherit the decedent's intestate personal property because that posthumously conceived child could only inherit through the decedent's will. Both the magistrate judge and district court agreed with the administrative law judge, and the Commissioner argues in favor of this interpretation on appeal. In doing so, the Commissioner asserts that intestacy under Florida law "occurs when a beneficiary collects all or a portion of a decedent's estate in the *absence* of a will" and that section 742.17(4) does not implicitly establish intestacy rights for a posthumously conceived child that has no claims to a decedent's estate except those created through a will.

By contrast, Ms. Steele argues that the phrase "unless the child has been provided for by the decedent's will" effectively vests such a child with intestate rights if he or she is provided for by the decedent's will. In essence, Ms. Steele argues that section 742.17(4) allows a posthumously conceived child to inherit a decedent's personal property intestate as long as the child is provided for by the decedent's will.

We find that section 742.17(4) is reasonably open to both interpretations. On one hand, section 742.17(4) may be reasonably read as limiting the rights of posthumously conceived children to property devised in the decedent's will, i.e., providing no right to inherit the decedent's property intestate. Indeed, the provision of Florida's probate code concerning afterborn heirs only addresses children conceived *before* the decedent's death. *See* Fla. Stat. § 732.106. Moreover, as previously mentioned, we also note the placement of section 742.17(4) within the Florida code—it is in the

title of the Florida code concerning domestic relations, not the probate code.  And we note that no Florida court has applied section 742.17(4) in this manner, although the administrative law judge believed that Florida courts would apply section 742.17(4) in determining a claimant's intestacy rights given Florida state court precedent.

On the other hand, the phrase "unless the child has been provided for by the decedent's will" in section 742.17(4) can be reasonably read as a condition for a posthumously conceived child to inherit a share of the decedent's property intestate.  We note that the term "unless" is defined as "except on the condition that" or "under any other circumstance than."  *Unless*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/unless; *see Ruiz v. Wing*, 991 F.3d 1130, 1138 (11th Cir. 2021) (explaining that, in analyzing the plain meaning of language, this Court looks "to the common usage of words for their meaning").  Thus, a reasonable reading of section 742.17(4) is that a posthumously conceived child cannot bring an intestate claim against the decedent's estate except if the child has been provided for by the decedent's will.  In other words, a posthumously conceived child who is provided for by the decedent's will occupies the same status as a child conceived before the decedent's death and thus can inherit through intestacy that portion of the decedent's estate not disposed of by the will.

Given these two reasonable interpretations of the Florida statute at issue, and the lack of Florida case law on the issue, we believe it is the better option to certify this dispositive issue to the

12                    Opinion of the Court                    20-11656

Florida Supreme Court.[2] *See WM Mobile Bay*, 972 F.3d at 1251; *In re Mooney*, 812 F.3d 1276, 1283 (11th Cir. 2016).  As a matter of federalism and comity, it is often appropriate to certify dispositive issues of Florida law to Florida's highest court for decision.  *See Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997).  Indeed, "[c]ertification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism."  *Id.*

---

[2] In our certification of this question to the Florida Supreme Court, we also observe that other provisions of the Florida code may be relevant to the issue.  As noted above, under Florida Statute § 732.101(1), "[a]ny part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs," which includes "the descendants of the decedent" under Florida Statute § 732.103(1).  Therefore, sections 732.101(1) and 732.101(3) appear to set forth another condition that P.S.S. must satisfy to inherit a decedent's property intestate.  And while not explicitly briefed by the parties, it is unclear to us whether any Florida provision recognizes a posthumously conceived child as a "descendant[] of the decedent."

For example, Florida Statute § 742.11 provides, in relevant part, that "any child born *within wedlock* who has been conceived by the means of artificial or in vitro insemination is irrebuttably presumed to be the child of the husband and wife." (Emphasis added).  But, under Florida law, "death, by operation of law, . . . terminate[s] the marriage." *See MacLeod v. Hoff*, 654 So. 2d 1250, 1251 (Fla. Dist. Ct. App. 1995) (applying this principle in a divorce proceeding).  Another provision, Florida Statute § 732.108(2), applies to "persons born out of wedlock," but it is unclear to us if any of the requirements within this statute apply to posthumously conceived children, especially because Florida Statute § 732.106 specifically defines "afterborn heirs" (and excludes posthumously conceived children from that definition).

We therefore certify to the Florida Supreme Court the following questions under Florida Rule of Appellate Procedure 9.150:[3]

> (1) Under Florida law, is P.S.S. "provided for" in the decedent's will within the meaning of Fla. Stat. § 742.17(4)?

> (2) If the answer is yes, does Florida law authorize a posthumously conceived child who is provided for in the decedent's will to inherit intestate the decedent's property?

Our phrasing of these questions "is intended only as a guide." *United States v. Clarke*, 780 F.3d 1131, 1133 (11th Cir. 2015). It is not our intention to restrict the Florida Supreme Court's consideration of the issues or its scope of inquiry. *See WM Mobile Bay*, 972 F.3d at 1251. The Florida Supreme Court "may, as it perceives them, restate the issues and modify the manner in which the answers are given." *Id.* And "[i]f we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed, we hope the [Florida] Supreme Court will feel free to make the necessary corrections." *Id.* (quoting *Spain*

---

[3] Under article V, section 3(b)(6) of the Florida constitution, the Florida Supreme Court "[m]ay review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Florida Rule of Appellate Procedure 9.150 establishes the procedures governing those discretionary proceedings to review such certified questions.

*v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1312 (11th Cir. 2000)).

## III.    CONCLUSION

For these reasons, we defer our decision in this case until the Florida Supreme Court has had the opportunity to consider and determine whether to exercise its discretion in answering our certified question. The entire record of this case, including the parties' briefs, is transmitted to the Florida Supreme Court.

**QUESTION CERTIFIED.**