# Supreme Court of Florida

----------

No. SC2022-1342

----------

**KATHLEEN STEELE,**
Appellant,

vs.

**COMMISSIONER OF SOCIAL SECURITY,**
Appellee.

February 15, 2024

GROSSHANS, J.

In this case, we are presented with two certified questions from the U.S. Court of Appeals for the Eleventh Circuit about the meaning of a Florida statute that speaks to the inheritance rights of "[a] child conceived from the eggs or sperm of a person or persons who died before the transfer of their eggs, sperm, or preembryos to a woman's body." § 742.17(4), Fla. Stat. (2019). The statute says that such children can only take from a decedent's estate if they are "provided for" in the decedent's will. In response to the Eleventh Circuit's first question, we hold that "provided for" in this context

means that the will must give something to the child as contemplated by the decedent when the will was made—a test that the appellant in this case does not satisfy. Given that answer, we need not address the Eleventh Circuit's other question, which asks whether Florida law allows a posthumously conceived child who *is* "provided for" in a decedent's will to inherit the decedent's intestate personal property.[1]

## Background

Philip and Kathleen Steele married in 1997. During their marriage, they had a son—conceived through in vitro fertilization. Following his son's birth, Mr. Steele submitted additional sperm samples to a fertility clinic.

Thereafter, with the assistance of a lawyer, Mr. Steele prepared a will. At the outset, Mr. Steele defined his family to encompass his spouse, his living children, and any later-born or adopted children. Elsewhere in the will, Mr. Steele addressed the disposition of his property. He devised to his wife all tangible personal property, the homestead property, and the residue of his

---

1. We have jurisdiction. *See* art. V, § 3(b)(6), Fla. Const.

estate.  If, however, his wife died before him, his children "then living" would inherit his tangible personal property.

Mr. Steele died roughly a year and a half after executing the will.  Following Mr. Steele's death, P.S.S. was conceived by in vitro fertilization using Mr. Steele's deposited sperm samples.  After P.S.S. was born, Ms. Steele sought survivor benefits from the Social Security Administration (SSA), contending that P.S.S. was entitled to such benefits as a child of Mr. Steele.  The SSA denied Ms. Steele's application.  In its view, P.S.S. did not qualify as Mr. Steele's child under the controlling federal statutes.

Disagreeing with that determination, Ms. Steele asked for administrative review.  However, an administrative law judge (ALJ) rejected Ms. Steele's position, agreeing with the SSA's determination that P.S.S. was not Mr. Steele's child under the applicable federal statutes.  *See generally* 42 U.S.C. § 402(d) (authorizing child's insurance benefits); 42 U.S.C. § 416(e), (h)(2)(A) (defining child based on state intestacy law); *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 545, 558 (2012) (interpreting section 416(h)(2)(A)'s intestacy-law requirement as informing section 416(e)'s

- 3 -

unelaborated definition of child).[2]  Since Mr. Steele died while

domiciled in Florida, the ALJ considered whether P.S.S. could take

from Mr. Steele's estate under Florida's intestacy statutes.  Such

statutes, often located in Florida's probate code, establish default

rules for distributing a decedent's property absent a valid will.

Finding no controlling statute in the probate code, the ALJ turned

to section 742.17—the statute noted at the beginning of this

opinion.  Under the ALJ's interpretation of the statute, a

posthumously conceived child, like P.S.S., could only inherit

through a will.  Thus, according to the ALJ, such a child could not

take under Florida's intestacy statutes.

Ultimately, Ms. Steele sued the SSA in federal district court.

The district court, however, ruled in the SSA's favor, agreeing with

the ALJ's conclusion and statutory interpretation.  Following that

unfavorable ruling, Ms. Steele appealed to the Eleventh Circuit.

In its ensuing opinion, the Eleventh Circuit noted that the

issue in this case—whether a "posthumously conceived" child could

---

2.  There are other ways for an individual to have child status. *See* 42 U.S.C. § 416(h)(2)-(3).  These alternative methods, though, are not applicable in this case.

take under Florida intestacy law—was one of first impression.

*Steele v. Comm'r of Soc. Sec.*, 51 F.4th 1059, 1061 (11th Cir. 2022).

The court then assessed the parties' competing interpretations of section 742.17(4), finding that each side had advanced a reasonable interpretation of it. *Id.* at 1064. One plausible interpretation, said the court, was that the statute "limit[s] the rights of posthumously conceived children to property devised in the decedent's will." *Id.* However, it also observed that "the phrase 'unless the child has been provided for by the decedent's will' in section 742.17(4) can be reasonably read as a condition for a posthumously conceived child to inherit a share of the decedent's property intestate." *Id.* So, in light of the "two reasonable interpretations" and the absence of Florida case law on point, the court certified two questions of Florida law, asking:

> (1) Under Florida law, is P.S.S. "provided for" in the decedent's will within the meaning of Fla. Stat. § 742.17(4)?

> (2) If the answer is yes, does Florida law authorize a posthumously conceived child who is provided for in the decedent's will to inherit intestate the decedent's property?

*Id.* at 1065. Notably, while the Eleventh Circuit's opinion discussed alternative answers to the second certified question, the opinion did not analyze the threshold question about the meaning and application of the phrase "provided for" in section 742.17(4).

This review proceeding follows.

## Analysis

We answer only the first certified question because our interpretation of the phrase "provided for" in section 742.17(4) is dispositive. As expressed in our cases involving statutory interpretation, we are committed to the supremacy-of-text principle—that is, "[t]he words of a governing text are of paramount concern" to us, and "what they convey, in their context, is what the text means." *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) (alteration in original) (quoting *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021)). In applying this principle, we begin with the text of the statute, which says in full:

> A child conceived from the eggs or sperm of a person or persons who died before the transfer of their eggs, sperm, or preembryos to a woman's body shall not be eligible for a claim against the decedent's estate unless the child has been *provided for* by the decedent's will.

§ 742.17(4) (emphasis added).

Under the statute, a will must "provide[] for" a posthumously conceived child in order for that child to "be eligible for a claim against the decedent's estate." *Id.* The term "provided for" is not defined in the statute or in any other part of chapter 742; nor have we had occasion to consider it in the context of this statute. To arrive at a fair reading of this term, we look to sources bearing on its objective meaning, that is: what a reasonable reader would have understood it to mean at the time it issued. *See Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 947 (Fla. 2020).

Often, the first sources we consult are dictionaries. *See Conage v. United States*, 346 So. 3d 594, 599 (Fla. 2022) (dictionaries are "best evidence" of ordinary meaning); *Ham*, 308 So. 3d at 948 (looking to contemporaneous dictionary definition to ascertain objective meaning of statutory text). One dictionary defines "provide" as "to make preparation to meet a need"—especially "to supply something for sustenance or support." *Provide, Webster's Ninth New Collegiate Dictionary* 948 (9th ed. 1990). Another era-appropriate dictionary defines the intransitive form of the verb "provide" as "[t]o supply means of subsistence." *Provide, The American Heritage Dictionary of the English Language*

- 7 -

1458 (3rd ed. 1992). These definitions show that, as a whole, "provided for" carries the idea of giving something to someone.

Consistent with these definitions, our case law in a related context underscores a necessary component of the term "provided for." *See Furst v. DeFrances*, 332 So. 3d 951, 954 (Fla. 2021) (looking to case law interpreting similar statutory phrase in a related context). In *Ganier's Estate v. Ganier's Estate*, 418 So. 2d 256, 258 (Fla. 1982), we considered the pretermitted-spouse statute, which protects "a spouse whom the testator . . . marrie[s] after executing a will" from "inadvertent disinheritance." *Id.*; *cf.* § 732.301, Fla. Stat. (1977) (pretermitted-spouse statute).[3] By its terms, that statute does not apply if the surviving spouse is "provided for" in the relevant will. In interpreting this term, we held: "[A] spouse has not been 'provided for,' within the meaning of section 732.301(2), unless the testator both provided for a person named in the will executed before marriage and made such provision *in contemplation of* marriage to that named person." *Ganier's Estate*, 418 So. 2d at 260 (emphasis added).

---

3. This statute has not changed since 1977. *See* ch. 1977-87, § 9, Laws of Fla. (last modification to statute).

We think that our interpretation of "provided for" in that case has some relevance here since giving something to someone encompasses contemplation of the recipient. Thus, in the context of section 742.17, contemplation of the post-death conception of a child would be necessary in order for that child to be provided for in the will.

Therefore, based on our analysis above, we conclude that "provided for" in section 742.17(4) means that the testator actually left something to the posthumously conceived child through the will. Or, put another way, the child must have some inheritance right under the will. As part of this requirement, the will must show that the testator contemplated the possibility of a child being conceived following his or her death.

Assessed against this standard, Mr. Steele's will does not "provide for" P.S.S. No part of the will acknowledges the possibility of children being conceived after Mr. Steele's death. To be sure, the will references afterborn or adopted children. But that mention of later-born children, as we read Mr. Steele's will, refers most naturally to children born after his will was drafted but conceived before his death, i.e., when the dispositional portions of the will

create vested rights.  *See* § 732.514, Fla. Stat. (2019); *see also* § 732.106, Fla. Stat. (2019) (defining afterborn heirs in a similar fashion).  Thus, this reference to later-born children would not cover P.S.S., who was conceived after Mr. Steele's death.[4]

But, even if we found that post-death conception was in some generic sense contemplated by Mr. Steele, P.S.S. could not have received anything under the will.  Mr. Steele's will conveyed *all* relevant property to Ms. Steele.  In the event that Ms. Steele had died before Mr. Steele, the tangible personal property would have been distributed to his "then living children."  By its terms, this fallback provision only applied to children living at the time Mr. Steele died and necessarily excluded any posthumously conceived children, like P.S.S.  Therefore, as it was impossible for P.S.S. to inherit anything from the will, it is clear that Mr. Steele did not provide for P.S.S. as contemplated by section 742.17(4).

---

4.  We do not address whether parol evidence could establish whether a child was contemplated by the decedent, as it is clear in this case that P.S.S. could not receive anything from the will.

## Conclusion

Accordingly, based on the reasoning above, Mr. Steele's will does not provide for P.S.S. Since P.S.S. is not provided for in the will, he is not "eligible for a claim against the decedent's estate." § 742.17(4). This holding—answering the first certified question—is determinative of the case. We decline to answer the second question and return this case to the Eleventh Circuit for further proceedings.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result with an opinion.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

This Court has long observed that "the polestar of statutory construction [is the] plain meaning of the statute at issue." *Acosta v. Richter*, 671 So. 2d 149, 153 (Fla. 1996). In this case, the plain meaning of "provide" discussed in the majority opinion is sufficient to resolve the dispositive certified question.

- 11 -

Mr. Steele's will does not "make preparation to meet a need" of P.S.S. or "supply [P.S.S.] something for sustenance or support,"[5] nor does it "supply [P.S.S. with] means of subsistence."[6]  To the contrary, as explained by the majority, Mr. Steele devised the homestead, tangible personal property, and the residue of his estate to Ms. Steele.  What is more, in the event that Ms. Steele predeceased Mr. Steele, the tangible personal property would be distributed to the children living at the time of Mr. Steele's death—a provision which unquestionably excludes P.S.S.

Thus, Mr. Steele's will does not "provide[] for" P.S.S. within the meaning of section 742.17(4), Florida Statutes (2019).

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 20-11656

Roger W. Plata and Enrique Escarraz, III, St. Petersburg, Florida,

for Appellant

Roger B. Handberg, United States Attorney, David P. Rhodes Assistant United States Attorney, Chief, Appellate Division, Todd B. Grandy, Assistant United States Attorney, Appellate Division,

---

5. *Provide*, *Webster's Ninth New Collegiate Dictionary* 948 (9th ed. 1990).

6. *Provide*, *The American Heritage Dictionary of the English Language* 1458 (3rd ed. 1992).

Nadine DeLuca Elder, Supervisory General Attorney, Natalie Liem, Special Assistant United States Attorney, and Richard V. Blake, General Counsel, Social Security Administration, Atlanta, Georgia,

 for Appellee

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Darrick W. Monson, Assistant Solicitor General, Office of the Attorney General, Tallahassee, Florida,

 for Amicus Curiae State of Florida