885 So.2d 939 (2004)
Mervin LEE, as Personal Representative of the Estate of Virginia Lee, deceased, Appellant,
v.
David SIMON, D.O., Columbia Palms West Hospital Limited Partnership d/b/a Palms West Hospital; William Jeffrey Davis, D.O.; Emergency Physicians Enterprises, Inc.; Eddie Velazquez, M.D.; Western Communities Family Practice of West Palm Beach, a/k/a Western Communities Family Practice Associates, Inc.; Steven Sacks, D.O.; South Florida Center of Gastroenterology, P.A.; Fred L. Simon, M.D.; A Mariano Ibarrola, M.D.; Palm Beach Surgical; Steven G. Goff, M.D.; Douglas L. Watson, M.D.; Jack Zeltzer, M.D.; Mitchell N. Davis, D.O.; Matthew J. Smith, D.O.; J.M.D.; Barry Abrams, M.D.; Barry Abrams, M.D., P.A.; Larry Bush, M.D.; and Suzanne Y. Succop, M.D., Appellees.
No. 4D03-3292.
District Court of Appeal of Florida, Fourth District.
October 27, 2004.
*940 Christian D. Searcy and Karen Terry of Searcy Denney Scarola Barnhart & Shipley, P.A., and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellant.
Douglas M. McIntosh, Louise H. McMurray and Robert C. Weill of McIntosh, Sawran, Peltz, Cartaya & Petruccelli, P.A., Miami, for appellee David Simon, D.O.
WARNER, J.
Mervin Lee, as personal representative of the Estate of Virginia Lee, appeals the trial court's summary final judgment dismissing his medical malpractice claim against Dr. David Simon on the grounds that the statute of limitations had expired before Lee sued Simon. Lee contended that he was unable to discover the identity of Dr. Simon through the use of due diligence, and that the issue of due diligence is a question of fact for the jury. We hold that the statute of limitations commenced when Lee was aware of the injury (death) and the reasonable possibility that it was caused by negligence. Because there is no tolling provision that would apply to prevent the running of the statute, nor is the defendant equitably estopped from asserting *941 the bar, the statute of limitations has run and we affirm the ruling of the trial court.
On May 31, 1998, Virginia Lee went to the emergency room of a local hospital complaining of abdominal pain and shortness of breath. She had a history of diverticulitis. She was initially seen by an emergency room physician. After an initial examination, Dr. Davis made a diagnosis of acute diverticulitis and possible sepsis. He contacted her primary care physician, Dr. Campitelli. Dr. David Simon was on call for Dr. Campitelli that day. Dr. Davis and Dr. Simon agreed that Virginia should be admitted to the hospital, and Dr. Simon gave the order to admit, also recommending a gastrointestinal consult. A nurse entered these orders on Virginia's hospital chart on a form entitled "Physician Orders and Signature." On the bottom, she handwrote "T.O. Simon." Apparently this is the hospital's abbreviation for telephone order by Dr. Simon. However, the emergency room records listed Dr. Campitelli as the admitting physician for Virginia.
Virginia was not seen by Dr. Ibarrola, a surgeon, until the next day. Exploratory surgery revealed a resected large bowel, perforated diverticula with abscess inflammation, as well as other complications. Following surgery, several other doctors saw Virginia, including Dr. Fred Simon, an associate of Dr. Ibarrola. Unfortunately, during a subsequent surgery while still hospitalized, Virginia suffered cardiac arrest and died on July 2, 1998. The Expiration Summary listed Dr. Campitelli as her physician. Nowhere does it list Dr. David Simon.
Believing medical malpractice occurred during Virginia's care and treatment, Lee commenced pre-suit proceedings under section 766.106, Florida Statutes (1998), by filing a notice of intent to initiate suit against various physicians associated with Virginia's care, including Dr. Campitelli and Dr. Fred Simon as well as twenty other healthcare providers involved in her treatment. Dr. David Simon was not identified as a potential defendant nor served with a notice of intent.
Lee claims that he first discovered Dr. David Simon's involvement with Virginia's care when Dr. Campitelli filed an affidavit during the pre-suit process on July 17, 2000, explaining that Dr. David Simon had telephoned the admitting orders for Virginia. A month later, Lee filed suit against twenty-five defendants but did not name Dr. David Simon because he had not been subject to pre-suit procedures. On February 28, 2001, Lee served notice of intent to sue on Dr. David Simon, who responded by denying the claim.
Lee filed an amended complaint in June 2001 joining Dr. David Simon. Dr. Simon filed an answer and then a motion for summary judgment based solely on the statute of limitations. Simon argued that the statute of limitations expired on September 1, 2000, which was two years plus the ninety-day extension period allowed by statute from the date of Virginia's admission to the hospital. Simon argued that his involvement in Virginia's care was readily available through a review of her records because of the nurse's notation of "T.O. Simon" on the admitting form. Had Lee's attorneys exercised due diligence, they could have discovered Simon's identity by simply calling the hospital. Because more than two years had passed from the date of Virginia's death and the initiation of pre-suit investigation, the statute of limitations had run, entitling Simon to summary judgment. Countering Simon's argument, Lee maintained there was nothing in the medical records to indicate that Dr. David Simon was involved in Virginia's treatment, and that he had not learned of *942 Simon until Campitelli submitted his affidavit.
The trial court granted the summary judgment, finding that the statute of limitations had expired. It relied on Frankowitz v. Propst, 489 So.2d 51 (Fla. 4th DCA 1986), in which we held that where the means of discovering a physician's involvement were readily available to plaintiff through the medical records, plaintiff's delay in examining those records did not toll the statute, and the physician was entitled to rely on the bar of the statute of limitations when suit was filed after its expiration. Lee appeals this final judgment.
The statute of limitations for medical malpractice actions is found in section 95.11(4)(b), Florida Statutes (1998):
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence.... In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence....
In Barron v. Shapiro, 565 So.2d 1319, 1322 (Fla.1990), the court construed an earlier but substantially similar version of this statute as triggering the running of the statute "when the plaintiff should have known either of the injury or the negligent act." The court modified this holding in Tanner v. Hartog, 618 So.2d 177, 181-82 (Fla.1993), and stated:
We hold that the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
(Footnote omitted). Thus, knowledge of an injury that may be caused by medical negligence is sufficient to commence the running of the statute of limitations. In this case, the statute started running with the death of Virginia. Lee cannot contest the fact that he knew both of the injury (death) and that negligence may have occurred. He filed a notice of intent to pursue litigation, and he served a notice on Dr. Campitelli, as the admitting physician, because he believed that negligence had occurred at the time Virginia was admitted to the hospital due to a failure to properly examine and diagnose her. Thus, he intended to bring a claim against the admitting physician. Contrary to Lee's argument, the statute of limitations does not commence when he discovers a person to be sued but instead commences when he has notice of the injury and its possible cause by medical negligence.
The question in this case is not when the statute began to run but whether Lee's failure to discover the identity of the doctor somehow tolls the statute of limitations. Section 95.11(4)(b) provides an extension where fraud or intentional concealment prevents the discovery of the injury, but it does not include a similar provision *943 for the failure to discover the negligent actor. Section 95.051(1), Florida Statutes (1998), provides when the running of the statute of limitations may be tolled. None of the grounds contained in that statute apply to this case.
In several cases we have considered whether the fraudulent concealment of the identity of the negligent actor tolls the statute. In International Brotherhood of Carpenters & Joiners of America, Local 1765 v. United Ass'n of Journeymen Apprentices, 341 So.2d 1005 (Fla. 4th DCA 1976), the plaintiff's building was damaged by an explosion. Suit was not brought until after the expiration of the applicable statute of limitations because the plaintiff did not discover the identity of the tortfeasor. We held that fraudulent concealment did not toll the statute of limitations, reasoning:
It is clear that the doctrine, recently reasserted by our Supreme Court in Nardone v. Reynolds, 333 So.2d 25 (Fla.1976), and cases cited, under which the statutory period is tolled because of a fraudulent concealment of the existence of a Cause of action which would give rise to a right to sue does not apply here. In this case, the plaintiff plainly knew that it had a cause of action in tort as soon as its building blew up. Its ignorance as to the identity of the potential defendant does not affect this fact, see 1 Fla.Jur., Actions, s 22, p. 148, nor, as all the authorities say, bring it within this limited exception to the statutory rule.
It can hardly be denied that the result we reach, which in effect rewards those who by criminal skill not only stealthily destroy another's property but avoid detection during the statutory period as well, is a harsh one. But all statutes of limitations, which by their very nature destroy otherwise just causes merely because of the passage of time, are inherently harsh. Harsh results represent a trade-off which the Legislature has decided it is willing to make in exchange for the burying of stale claims. Even in the provisions of F.S. s 95.051, enacted after the events involved in this case, the Legislature has declined to exclude the situation before us from the effect of this decision; it certainly had not done so before. In the end, Its determination should, and therefore does, prevail.
341 So.2d at 1006-07 (citations omitted).
We relied on International Brotherhood in Sullivan v. Fulton County Administrator, 662 So.2d 706, 707-08 (Fla. 4th DCA 1995), rev. in part on other grounds, 753 So.2d 549 (Fla.1999),[1] and held, with some expression of distaste, that the fraudulent concealment of the identity of a murderer so that a wrongful death action could not be brought within the two-year statute of limitations did not toll the statute. Again, in Putnam Berkley Group, Inc. v. Dinin, 734 So.2d 532, 534 (Fla. 4th DCA 1999), we held that fraudulent concealment of the identity of a wrongdoer did not toll the statute because section 95.051 did not contain such a provision, and section 95.051(2) specifically provides that "`No disability or other reason shall toll the running of any statute of limitations except those specified in this section....'"
*944 The supreme court ameliorated the effect of this construction of the statute in Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001). While acknowledging that the reasons for tolling the statute set forth in section 95.051 were a legislatively mandated exclusive set of circumstances that would suspend the relevant statute of limitations, it found the principle of equitable estoppel could be used to prevent a defendant from raising the statute of limitations as a bar to suit. 790 So.2d at 1075-77. The court stated:
The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury. State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla.1950).
Id. at 1076. Thus, while tolling operates on the statute, equitable estoppel operates on the party.
We elaborate on the construction of tolling provisions and equitable estoppel to contrast with the facts of this case. Here, there is no suggestion of fraudulent concealment of the identity of the doctor, and even if there were, it would not toll the statute of limitations. Equitable estoppel would not apply because there is nothing in the record to suggest that the doctor in any way misled or prevented Lee from discovering his identity. The hospital medical records may have been inaccurate by referring to Dr. Campitelli as the admitting physician in some places, but this was not due to any fault of Dr. David Simon. The records did contain the name Simon on the physician's notes regarding admission. Nothing suggests any reason why Dr. David Simon should be equitably estopped from asserting the bar of the statute of limitations.
Lee in essence argues that he should be relieved from the effect of the statute of limitations because of excusable neglect. We do not doubt that he used care in reviewing the medical records and simply missed Dr. Simon's name. But excusable neglect is not a ground for tolling the statute. And it is not attributable in any way to Dr. David Simon's conduct.
In Louis v. South Broward Hospital District, 353 So.2d 562, 563 (Fla. 4th DCA 1977), we held that the statute of limitations barred suit where the plaintiff filed suit against the wrong defendant and later tried to amend to add a different defendant after the running of the statute of limitations. The plaintiff filed suit against Hollywood Memorial Hospital of West Hollywood. The summons was issued to Hollywood Memorial Hospital-North Broward Hospital District. An amended summons and complaint was issued after the running of the applicable statute of limitations naming Hollywood Memorial Hospital-South Broward Hospital District at a different address than the first summons. The trial court granted summary judgment, finding that the action was instituted against South Broward Hospital District, a different entity than North Broward Hospital District, after the running of the statute of limitations. We said, "An amendment which merely corrects a misnomer might well relate back to the date the complaint was originally filed but this relation back rule is inapplicable where the effect is to bring new parties into the suit." 353 So.2d at 563.
Here, Lee filed a notice of intent to litigate against Dr. Campitelli for his negligence in Virginia's admission to the hospital. After finding that Dr. David Simon was the admitting physician, Lee filed suit against him. Just as in Louis, a new party was added, and the amendment cannot relate back to the filing of the suit.
*945 Finally, Frankowitz expresses the principle that knowledge of the contents of the medical records are imputed to a party even when the contents are not known. 489 So.2d at 52 (citing Nardone, 333 So.2d at 34). In Frankowitz, the injured patient knew that Dr. Frankowitz had treated her for a heart condition but did not realize that he was also involved in her treatment for gastrointestinal disorders, which formed the bases of her medical malpractice claim. The details of his treatment were in the records but the plaintiff did not read them because she thought they were not germane to her claim. Nevertheless, knowledge of whatever was contained in the medical records was attributable to the plaintiff. Id. Likewise, knowledge of what was in Virginia's medical records was attributable to Lee. This included the reference to "Simon" on the orders admitting Virginia to the hospital. Although it may have required some investigation to discover the identity of Dr. David Simon, we cannot conclude that it was impossible. Moreover, it does not appear that the Legislature has provided for an exception to the running of the statute of limitations for such cases.
For these reasons, we affirm the final judgment in favor of Dr. David Simon based upon the bar of the statute of limitations.
SHAHOOD, J., and GATES, MICHAEL L., Associate Judge, concur.
NOTES
[1] The supreme court issued two opinions in this case. The first agreed with this court's analysis of the tolling issue. Fulton County Adm'r v. Sullivan, 22 Fla. L. Weekly S578, 1997 WL 589312 (Fla. Sept. 25, 1997). We quoted extensively from this opinion in Putnam Berkley Group, Inc. v. Dinin, 734 So.2d 532, 533-34 (Fla. 4th DCA 1999). However, the opinion was subsequently withdrawn, and the case was decided on another issue. See Fulton County Adm'r v. Sullivan, 753 So.2d 549 (Fla.1999). The second opinion did not address the tolling statute.