**PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-11020

_____

EDWARD T. SAADI,

*Plaintiff-Appellant,*

*versus*

PIERRE A. MAROUN, ET AL.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:07-cv-01976-SCB-JSS

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

LAGOA, CIRCUIT JUDGE:

In this diversity action, Edward T. Saadi, a judgment creditor, appeals from the district court's orders that (1) entered summary judgment in favor of the defendant-judgment-debtor, Pierre Maroun, and the defendant-company, Maroun's International,

LLC ("MILLC"), on Saadi's claims that Maroun fraudulently transferred funds to MILLC to avoid paying a $90,000 judgment to Saadi, and (2) denied Saadi's motion for discovery sanctions and a stay of proceedings until MILLC produced a particular representative for deposition.  After briefing on appeal, Saadi moved to certify several legal questions presented in this case to the Florida Supreme Court.  We have determined that some of these questions of Florida law are dispositive as to several issues in this case, and that there is no controlling precedent from the Florida Supreme Court.  Accordingly, we respectfully certify these questions to the Florida Supreme Court for resolution.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In November 2007, Saadi filed a defamation lawsuit against Maroun and MILLC in a federal district court under its diversity jurisdiction.[1]  Two years later, a jury found Maroun liable for defamation and awarded Saadi $90,000 in compensatory and punitive damages.  The district court entered judgment in favor of Saadi. For the next nine years, Saadi received no payment from Maroun or MILLC, and his attempts to use the district court's various enforcement powers to secure his judgment proved unfruitful.

On October 9, 2018, Saadi claimed that he had finally discovered facts that enabled him to commence proceedings supplementary under Florida Statute § 56.29.  In so doing, Saadi requested permission "to file and serve an Impleader Complaint against [MILLC]

---

[1] Saadi is a licensed attorney proceeding *pro se*.

for fraudulent transfer under Chapter 726." On March 21, 2019, the district court granted Saadi's motion in part, impleading MILLC, issuing a notice to appear to MILLC, and granting Saadi leave to file an impleader complaint.

On April 4, 2019, Saadi filed an initial impleader complaint against Maroun and MILLC. After much back-and-forth over the sufficiency of his complaint, Saadi filed a second amended impleader complaint on March 9, 2020, raising claims for: (1) fraudulent transfer under § 56.29, Fla. Stat., ("Count 1"); (2) actual fraud under § 726.105(1)(a), Fla. Stat., ("Count 2"); and (3) constructive fraud under §§ 726.105(1)(b) and 726.106(1), (2), Fla. Stat., ("Count 3").

Saadi alleged the following: Beginning in about February 2010, Maroun concealed himself and could not be located, making it impossible to serve charging orders and discovery requests to aid collection of the 2009 judgment. After Saadi obtained his judgment against Maroun, a non-party wired $289,922 into Maroun's personal bank account, and Maroun quickly transferred $250,000 from that account to a corporate account owned by MILLC to place those funds beyond Saadi's reach. Maroun then used those fraudulently transferred funds to buy a condominium, which is titled to MILLC, but has become Maroun's personal residence. Maroun also used these funds to pay for his personal expenses, including child support. Saadi alleges that Maroun fraudulently transferred these funds to defraud Saadi and evade collection of the judgment. Under Count 1, Saadi sought a judgment that would, among other

things: (1) void the fraudulent transfer of funds under § 56.29(3)(b); (2) declare that those funds and the condominium could be used to satisfy the judgment; (3) grant an immediate execution on the funds and the condominium under § 56.29(3)(b); and (4) grant Saadi a money judgment against MILLC under § 56.29(6) and (8).

In February 2021, Saadi sent MILLC a notice of deposition under Rule 30(a)(1), Fed. R. Civ. P., stating that he would be taking the deposition of Omar Qawasmi on March 19, 2021. The notice stated that, upon information and belief, Qawasmi was an "officer, member, managing member, director, and/or managing director" of MILLC. After Qawasmi failed to appear for the deposition, Saadi moved under Rule 37(d)(1), Fed. R. Civ. P., for sanctions against MILLC for its failure to produce Qawasmi for deposition. In the alternative, he requested an order under Rule 37(b)(2)(A)(iv) staying proceedings until MILLC produced Qawasmi for an in-person deposition.

The district court denied Saadi's motions. It found that Saadi failed to show that Qawasmi was an officer, director, or managing agent of MILLC, so MILLC was not required to produce him for the deposition. The district court also determined that, while Qawasmi's testimony might have been relevant to the case, this potentially relevant testimony related to personal matters, not knowledge obtained in his capacity representing MILLC.

Eventually, all three parties moved for summary judgment, and the district court entered summary judgment on the second amended impleader complaint in favor of Maroun and MILLC.

The district court found that Counts 2 and 3 were time-barred under § 726.110, because Saadi did not bring these claims until his April 4, 2019, interpleader complaint. The district court found that Saadi had until September 1, 2018, to raise Count 2 because the relevant limitation period ended one year after he learned of the transfer on September 1, 2017. And Saadi had until September 7, 2016, to raise Count 3 because the relevant limitation period ended four years after the allegedly fraudulent September 7, 2012, transfer. The district court rejected Saadi's argument that these limitation periods should be tolled under Florida's tolling statute, § 95.051, finding that § 95.051 applied only to statutes of limitations, not statutes of repose like § 726.110. Even if § 95.051 applied to § 726.110, the court reasoned, Saadi did not establish a basis to toll the limitation periods. The court added that, according to "Florida courts," § 95.051 provides a basis for tolling only for fraudulent concealment of the tort itself, not for concealing the identity of the tortfeasor, and Saadi provided no evidence that Maroun sought to conceal the purportedly fraudulent transfer.

As to Count 1, the district court found that *McGregor v. Fowler White Burnett, P.A.*, 332 So. 3d 481 (Fla. 4th DCA 2021), "dictate[d] a finding" that Saadi's claim was subject to the limitation period under § 726.110 and, thus, was time-barred. The district court stated that relief under § 56.29(3)(b) is limited to voiding a fraudulent transfer and directing the sheriff to seize personal property involved in the transfer. Saadi, however, sought monetary damages and other relief unavailable under § 56.29(3)(b), meaning that his claim instead had to be pursued under § 56.29(9), which in

6                    Opinion of the Court                  22-11020

turn is subject to the limitation periods in § 726.110.  The district court found that Saadi could not bring Count 1 under § 56.29(3)(b) because: (1) the condominium was not personal property; and (2) the funds transferred in 2012 were not identifiable.  Since Count 1 was a "fraudulent transfer claim based on actual fraud," it could only be brought under § 726.105(1)(a), so it was time-barred for the same reasons as was Count 2.

This timely appeal followed.

## II.    RELEVANT LAW

Before discussing the legal issues in this case, we first set forth the legal principles relevant to this appeal.

Generally, execution of a money judgment "in proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the [federal district] court is located." Fed. R. Civ. P. 69(a)(1).  Florida Statute § 56.29 authorizes proceedings supplementary, "which allow for a judgment creditor 'to ferret out what assets the judgment debtor may have or what property of his others may be holding for him, or may have received from him to defeat the collection of the lien or claim, that might be subject to the execution.'" *Longo v. Associated Limousine Servs., Inc.*, 236 So. 3d 1115, 1118 (Fla 4th DCA 2018) (quoting *Young v. McKenzie*, 46 So. 2d 184, 185 (Fla. 1950)).

To begin a proceeding supplementary, a judgment creditor must file a motion and affidavit identifying "property of the judgment debtor not exempt from execution in the hands of any person or any property, debt, or other obligation due to the judgment

debtor which may be applied toward the satisfaction of the judgment." Fla. Stat. § 56.29(1)–(2). If property of the judgment debtor is in the hands of another person, the court must issue a notice to appear, directing that person to file an affidavit as to why the property should not be used to satisfy the judgment. *Id.* § 56.29(2).

If "any person on confidential terms with the judgment debtor claims title and right of possession" to any "personal property" to which the judgment debtor had title within one year before service of process in the original proceeding, the judgment debtor must show that he did not transfer such property in an effort to delay, hinder, or defraud creditors. *Id.* § 56.29(3)(a). If he did, "the court shall order the . . . transfer . . . to be void and direct the sheriff to take the property to satisfy the execution." *Id.* § 56.29(3)(b).

Additionally, "[t]he court may order any property of the judgment debtor not exempt from execution or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt." *Id.* § 56.29(6)(a). "The court may enter any orders, judgments, or writs required to carry out the purpose of this section, . . . including entry of money judgments[.]" *Id.*

A judgment creditor can also bring claims under the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Florida Statute § 726.101 *et seq.*, in a proceeding supplementary, pursuant to section 56.29(9). For such claims, "[t]he court may . . . enter any order

or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property. Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure." *Id.* § 56.29(9).

Under § 726.105(1)(a)–(b), a debtor's transfer is fraudulent as to a present or future creditor if made: (a) with the actual intent to hinder, delay, or defraud the creditor; or (b) without receiving a reasonably equivalent value in exchange for the transfer. Under § 726.106(1)–(2), a debtor's transfer is also fraudulent as to a present creditor if made: (1) without receiving a reasonably equivalent value in exchange and the debtor was either insolvent prior to the transfer or became insolvent as a result; or (2) to an insider for an antecedent debt if the debtor was insolvent and the insider had reasonable cause to believe the debtor was insolvent.

Before 2014, a judgment creditor could bring fraudulent transfer claims in proceedings supplementary for the life of the judgment. Following the 2014 amendments to § 56.29, however, FUFTA claims brought in proceedings supplementary "are subject to chapter 726," *id.* § 56.29(9), and § 726.110 establishes the following limitations periods for FUFTA claims: (1) a cause of action under § 726.105(1)(a) is extinguished four years after the transfer was made or, if later, one year after the transfer was or could reasonably

have been discovered by the claimant;[2] (2) a cause of action under § 726.105(1)(b) or § 726.106(1) is extinguished four years after the transfer was made; and (3) a cause of action under § 726.106(2) is extinguished one year after the transfer was made. *Id.* § 726.110(1)–(3).

## III.   ANALYSIS

With these general legal principles in mind, we now address the questions for which Saadi has requested certification to the Florida Supreme Court. As explained below, we respectfully certify five of these questions.[3]

### A. Remedies Under Florida Statute § 56.29

The first three questions concern the availability of remedies under § 56.29:

> 1. Can a judgment creditor obtain a money judgment against a transferee in a claim under § 56.29(3)(b)?

---

[2] The one-year savings clause under § 726.110(1) is triggered by discovery of the transfer, not by discovery of facts showing that the transfer was fraudulent. *Nat'l Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 192 So. 3d 498, 503–09 (Fla. 2d DCA 2016).

[3] The Florida Supreme Court "[m]ay review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. Const. art. V, § 3(b)(6); *see also* Fla. Stat. § 25.031. Florida Rule of Appellate Procedure 9.150 "establishes the procedures governing those discretionary proceedings to review such certified questions." *Steele v. Comm'r of Soc. Sec.*, 51 F.4th 1059, 1065 n.3 (11th Cir. 2022).

2. Can a judgment creditor seek fraudulently transferred funds under § 56.29(3)(b), and, if so, must those funds be identifiable?

3. Can the 2014 and 2016 amendments to § 56.29 be applied retroactively to claims that accrued prior to the amendments?

For each of these questions, Florida's intermediate appellate courts have reached conflicting conclusions, pointing strongly in favor of certification.[4]  In examining these conflicting conclusions, we focus our attention on the decision of the Fourth District Court of Appeal ("Fourth DCA") in *McGregor v. Fowler White Burnett, P.A.* and the decision of the Third District Court of Appeal ("Third DCA") in *Rosenberg v. U.S. Bank*, 360 So. 3d 795, 801–03 (Fla. 3d DCA 2023), *reh'g denied* (June 7, 2023), *review dismissed sub nom. Rosenberg v. U.S. Bank, N.A.*, 2024 WL 370050 (Fla. Jan. 31, 2024).

### i.  First Question for Certification

We turn to the first question: Is a money judgment available under § 56.29(3)(b)?[5]

---

[4] *See, e.g., Pendergast v. Spring Nextel Corp.*, 592 F.3d 1119, 1121, 1137 (11th Cir. 2010) (holding that "conflicting decisions in the Florida intermediate appellate courts require[d] that we certify certain questions to the Florida Supreme Court," where it was "not clear what a Florida court," including the State's highest court, "would do if this case were presented to it").

[5] Contrary to Maroun and MILLC's claims, Saadi did not concede in the district court that a money judgment was unavailable under § 56.29(3)(b).  In fact, at a hearing on the issue of whether Count 1 was time-barred, Saadi clarified that

The Fourth DCA says no. In *McGregor*, the Fourth DCA held that relief under subsection (3)(b) is limited to voiding transfers of personal property where the property can be seized to satisfy execution of the judgment. 332 So. 3d at 491. The court explained that a plaintiff can bring a FUFTA claim for money damages under § 56.29(9). *Id.* at 492. Allowing money judgments under both § 56.29(3) and § 56.29(9), it reasoned, "would lead to an absurd result," whereby a plaintiff could bring identical claims, but only the claim brought under § 56.29(9) would be subject to FUFTA's limitation periods. *Id.* (quotation marks omitted). The Fourth DCA thus concluded that § 56.29(3)(b) does not allow for an award of money damages.

The Third DCA, on the other hand, has rejected *McGregor* and come to the opposite conclusion. In *Rosenberg*, the Third DCA held that § 56.29(6) "expressly authorizes money judgments as remedies in proceedings supplementary in general, including claims for fraudulent transfers" under § 56.29(3). 360 So. 3d at 802. The court held that § 56.29(6) authorizes issuance of a money judgment for "this section," and that the Legislature's careful use of the words "section" and "subsection" indicates that it did not intend to limit a money-damages remedy to specific subsections of the

he was continuing to seek monetary damages, "separate and apart from the execution and seizure of the condominium and the funds." We agree with Saadi that nothing in the transcript of that hearing can be interpreted as a concession that monetary damages are unavailable in a § 56.29(3)(b) claim, so the issue has not been relinquished on appeal. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022).

statute. *Id.* Furthermore, before the Legislature amended § 56.29(6) to authorize money judgments expressly, Florida courts had interpreted that section as permitting money judgments as a remedy for fraudulent transfers. *Id.* at 802–03 & n.5. As such, any added "express references to money judgments [should not] be read as making them less available than they were before the express references were added." *Id.* at 803. For these reasons, the Third DCA determined that money judgments are a remedy for a fraudulent transfer under § 56.29(3)(b).

*McGregor* and *Rosenberg* are thus in direct tension on this issue, and we believe that the Florida Supreme Court is best suited to resolve this unsettled question of Florida law.

### ii.  Second Question for Certification

We now turn to the second question: Can a judgment creditor seek fraudulently transferred funds under § 56.29(3)(b), and if so, must those funds be identifiable?

In *McGregor*, the Fourth DCA held that the judgment creditor in that case could not seek the disputed funds that had been transferred under § 56.29(3)(b). 332 So. 3d at 490–91. As the court explained, § 56.29(2) requires the judgment creditor to describe the property, debt, or other obligation due to the judgment debtor that may be applied toward satisfaction of the judgment, but funds cannot be considered such property, debt, or other obligation. *Id.* at 491. Additionally, § 56.29(3)(b) limits the available relief to turnover of "identifiable" personal property to the sheriff, and the disputed funds in *McGregor* were not "identifiable." *Id.* at 488, 491.

In *Rosenberg,* the Third DCA again rejected *McGregor*'s conclusion, holding that § 56.29(3) refers to "personal property," including intangible personal property, which is generally understood to include funds and to be the opposite of "real property." 360 So. 3d at 803–05. As support, the Third DCA cited the Florida tax code, which defines "intangible personal property" to include "money," *id.* at 804, and "longstanding precedent" in which "courts recognized that a judgment creditor could use [§] 56.29(3) or its earlier versions to set aside a fraudulent transfer of funds," *id.* at 804–05. The Third DCA thus concluded that § 56.29(3) is "available to set aside the fraudulent transfers of funds." *Id.* at 803.

Relatedly, whether a judgment creditor may seek the judgment debtor's property other than the fraudulently transferred property, especially if the desired property is real property, is equally unclear. While the First and Fifth DCAs have held that an equitable lien against a judgment debtor's real property could be sought in a proceeding supplementary under § 56.29, *see Whigham v. Muehl*, 511 So. 2d 717, 717–18 (Fla. 1st DCA 1987); *Zureikat v. Shaibani*, 944 So. 2d 1019, 1021, 1023–24 (Fla. 5th DCA 2006), the Second DCA has held that § 56.29(3)(a) does not apply to transfers of real property, *see Clampitt v. Wick*, 320 So. 3d 826, 832 (Fla. 2d DCA 2021).

We find these matters of state law to be unsettled and believe it best left to the Florida Supreme Court to resolve these questions.

### iii. Third Question for Certification

We now address the third question for certification: Can the 2014 and 2016 amendments to § 56.29 be applied retroactively to claims that accrued prior to the amendment?

As background, the Florida Supreme Court has held that "constitutional due process considerations" generally "prevent the State from retroactively abolishing vested rights," and thus "retroactive abolition of substantive vested rights is prohibited." *Metro. Dade Cnty. v. Chase Fed. Hous. Corp.*, 737 So. 2d 494, 503 (Fla. 1999). Additionally, while a statutory amendment affecting a limitation period cannot extinguish an existing claim, it can shorten that period "if the intent to make the amendment retroactive is clearly expressed, and if a reasonable time is allowed within which to seek enforcement of such claim." *Polt Cnty. BOCC v. Special Disability Tr. Fund*, 791 So. 2d 581, 583 (Fla. 1st DCA 2001); *accord Bauld v. J.A. Jones Constr. Co.*, 357 So. 2d 401, 403 (Fla. 1978).

In *McGregor*, the Fourth DCA held that claims for money judgments brought under § 56.29 for fraudulent transfers are subject to the limitation periods in § 726.110. 332 So. 3d at 484. As read by the Fourth DCA, the 2014 amendments to § 56.29 reserved a money judgment remedy solely to FUFTA claims brought under § 56.29(9), and the limitations period under § 726.110 expressly applies to § 56.29(9). *See id.* at 489–91. The Fourth DCA reasoned that it would be absurd to interpret the statute as allowing identical causes of action under § 56.29(3) and (9) with each being subject to a different limitation period. *Id.* at 492. The Fourth DCA held that retroactively applying this amended limitation period did not affect

the plaintiff's due process rights because: (1) the legislative history indicated the amendments were to "be applied retroactively to the full extent permitted by law"; and (2) the plaintiff had a reasonable time to bring his claim because § 726.110 allowed for the claim to be brought one year after the discovery of the fraudulent transfer. *Id.* at 485, 489, 492–93.

In *Rosenberg*, the Third DCA again rejected *McGregor*'s conclusion, holding instead that the remedy of a money judgment "extends for the life of the judgment." 360 So. 3d at 801. "[E]ven after the 2014 and 2016 amendments," the Third DCA explained, "the Legislature clearly maintained the fraudulent transfer remedy under subsection 56.29(3) as separate and distinct from the fraudulent transfer remedy under Chapter 726." *Id.* at 800. The amendments included language about FUFTA only in § 56.29(9), not § 56.29(3), and "[w]hile it might be 'absurd' to have different statutes of limitations for an 'identical cause of action for money judgments for fraudulent transfers,' it is not absurd to have different statutes of limitations for different remedies." *Id.* at 801. Because the Third DCA held that the amended limitation period did not apply, and that the fraudulent-transfer remedy in proceedings supplementary extends for the life of the judgment, it did not address whether retroactive application of the limitation period would offend due process.

For these three questions relating to the availability of remedies under § 56.29, Florida's Third and Fourth DCAs have offered conflicting interpretations of Florida law and have come to

diametrically different conclusions. As a result of this conflict, and having no clear indication on how the Florida Supreme Court would rule, we certify the aforementioned questions to the Florida Supreme Court.

We now turn to address the remaining two questions for certification.

### B.  Tolling Provisions

The next two questions we certify relate to whether tolling of a statute of limitation or statute of repose is applicable to Saadi's claims under FUFTA and § 56.29.

First, are claims brought under FUFTA subject to the statutory tolling provisions of § 95.051?

Here, the district court entered summary judgment on Counts 2 and 3 because it determined that § 726.110—a statute of repose—had run and was not subject to tolling. Specifically, the district court held that § 95.051 tolls only statutes of limitations, not statutes of repose. Statutes of limitations, of course, "bar actions by setting a time limit within which an action must be filed as measured from the accrual of the cause of action, after which time obtaining relief is barred," whereas "statutes of repose bar actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished." *Hess v. Phillip Morris USA, Inc.*, 175 So. 3d 687, 695 (Fla. 2015) (quotation marks omitted). Even if § 95.051 did somehow toll § 726.110, the district court added, Saadi did not establish a basis to toll the limitations period in this case.

On our review of the relevant Florida law, there is substantial uncertainty regarding whether § 95.051 tolls only statutes of limitations, or also tolls statutes of repose. The Florida Supreme Court has not addressed this specific issue,[6] and the Second, Third, and Fourth DCAs have suggested varying answers. *Compare Nat'l Auto Serv. Ctrs., Inc.*, 192 So. 3d at 510–12 (holding that § 726.110 is a statute of repose that is not subject to equitable tolling), *and Sabal Chase Homeowners Ass'n, Inc. v. Walt Disney World Co.*, 726 So. 2d 796, 798–99 (Fla. 3d DCA 1999) (holding that tolling provisions for a statute of limitations in actions brought by condominium associations did not apply to a related statute of repose), *with Moore v. Winter Haven Hosp.*, 579 So. 2d 188, 190 (Fla. 2d DCA 1991) ("[A] statute of repose is a form of a statute of limitations and the terms are often used interchangeably. The 'statute of repose' is subsumed in the general term 'statute of limitations.'" (citation omitted)) (holding that a tolling provision that mentioned only "statute of limitations" still tolled a statute of repose), *and Brown v. MRS Mfg. Co.*, 617 So. 2d 758, 759 n.5 (Fla. 4th DCA 1993) (stating that "any suspension of a limitations period under section 95.051(1), resulting from the pendency of bankruptcy proceedings should apply equally well to statutes of repose"). Based on this conflict in the Florida courts, and absent an indication on how the Florida

---

[6] We note that the Florida Supreme Court has held in at least one other case that a tolling provision "applicable to [a] statute of limitations [was] equally applicable to [a] statute of repose." *Musculoskeletal Inst. Chartered v. Parham*, 745 So. 2d 946, 952–53 (Fla. 1999).

Supreme Court would rule, we certify the question of whether § 95.051 tolls the limitation periods in § 726.110.

Second, whether fraudulent concealment of the identity of the tortfeasor is a valid basis for tolling the statute of limitations under § 95.051(1)(c) appears to be an unanswered question under Florida law.

A Florida Supreme Court opinion from 1997 (now withdrawn for other reasons) and the Fourth DCA have held that, under § 95.051(1)(c), tolling is only available for the fraudulent concealment of a tort itself, while the fraudulent concealment of the identity of the tortfeasor does not toll the statute of limitations. *See Putnam Berkley Grp., Inc. v. Dinin*, 734 So. 2d 532, 533–34 (Fla. 4th DCA 1999 ("[T]he plain language of section 95.051 does not provide for the tolling of the statute of limitations in cases in which the tortfeasor fraudulently conceals his or her identity." (quoting *Fulton Cnty. Adm'r v. Sullivan*, 1997 WL 589312 (Fla. Sept. 25, 1997), *opinion withdrawn and superseded on reh'g*, 753 So. 2d 549 (Fla. 1999))). Notably, the Florida Supreme Court has since stated (in a footnote) that the "[s]tatutory bases for tolling the statute of limitations are set forth in section 95.051, Florida Statutes (1991), and include *inter alia* . . . concealment of the defendant[.]" *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 n.10 (Fla. 2001). This interpretation, while likely to be dicta, appears to align with the plain language of the statute, which says that "[t]he running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36

is tolled by . . . [c]oncealment in the state of the person to be sued so that process cannot be served on him or her." *See* § 95.051(1)(c).

Regardless, the Florida Supreme Court has not ruled clearly on this issue, and the intermediate appellate courts continue to hold that fraudulent concealment of the identity of a wrongdoer does not toll the statute of limitations under § 95.051(1). *See, e.g.,* *Lee v. Simon*, 885 So. 2d 939, 944 (Fla. 4th DCA 2004). As such, we continue to lack guidance on this issue, and we thus certify this question to the Florida Supreme Court.

⋆          ⋆          ⋆

Having shown substantial uncertainty on the five questions discussed above, we now address whether these five questions are also determinative of the case. *See Jones*, 331 F.3d at 1268; Fla. Const. art. V, § 3(b)(6). We conclude that they are determinative of the case. The first three questions are determinative because which statute of limitations applies to Count 1 depends on whether a monetary judgment is available under § 56.29(3) or § 56.29(9). The district court determined that Count 1 was properly brought under § 56.29(9), was subject to a shorter limitation period, and was time-barred as a result. But if the district court's finding about the availability of money judgments under § 56.29(3)(b) was wrong, so too was its basis for finding that claim to be time-barred. The fourth and fifth questions may also be determinative because Saadi brought Counts 2 and 3 during the life of the judgment but *after* the limitation periods in § 726.110. If § 726.110 applies and tolling is available, Saadi's claims may not be time-barred.

Because the five questions of Florida state law discussed above are both subject to substantial uncertainty and are determinative of the case, we certify them to the Florida Supreme Court.[7]

## C. Deferred Question

In addition to appealing the district court's summary judgment order, Saadi asks us to determine whether the district court abused its discretion by denying Saadi's motion for sanctions and a stay and by finding that Omar Qawasmi was not a director or managing agent of MILLC. Unlike the summary judgment order, this order concerns only federal law, not state law. Still, we decline to answer this federal-law question at this stage of the appeal.

---

[7] Saadi also argues, on appeal, that the date he filed his motion for proceeding supplementary, not his impleader complaint, should have been used for purposes of determining whether Counts 2 and 3 were timely because § 56.29(1) and (2) required him to first seek leave to file such a complaint. We decline to certify any questions related to this issue. Nothing in § 56.29 required Saadi to obtain the district court's leave to file a complaint. Indeed, "[o]nce the[ ] prerequisites [in the statute] are met, a judgment creditor 'is entitled to the proceedings supplementary,' § 56.29(1); [and] a court cannot deny a motion that meets the statutory prerequisites." *Biel Reo, LLC v. Barefoot Cottages Dev. Co.*, 156 So. 3d 506, 509 (Fla. 1st DCA 2014). Additionally, Saadi's claims under FUFTA are explicitly initiated by filing a supplemental complaint. *See* Fla. Stat. § 56.29(9) ("Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure."). Because this issue does not involve any complex or unsettled questions of Florida law, we will, instead, resolve it on the briefs following a response to our certification.

Whether the district court abused its discretion here is relevant *only if* Saadi's claims are not time-barred. This is because, if his claims are time-barred, he cannot suffer harm from the district court's failure to impose sanctions. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process"); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) ("[D]iscovery rulings will not be overturned unless it is shown that they resulted in substantial harm to the appellant's case." (citation modified)). Whether Saadi's Count 1 is time-barred depends on the answers to Questions 1–3, and whether Counts 2 and 3 are time-barred depends on the answers to Questions 4 and 5. Because we are certifying those questions, we may not need to address the federal law question at all, and if we do, we will defer addressing this question until the Florida Supreme Court has had an opportunity to consider our certified questions and determine whether it will exercise its discretion in answering the certified questions.

## IV. CONCLUSION

For the reasons stated above, we certify to the Florida Supreme Court the following questions under Florida Rule of Appellate Procedure 9.150:

1. Can a judgment creditor obtain a money judgment against a transferee in a claim under Fla. Stat. § 56.29(3)?

2. Can a judgment creditor seek fraudulently transferred funds under § 56.29(3)(b), and, if so, must those funds be

22                    Opinion of the Court                    22-11020

identifiable; may a judgment creditor seek transfer of a judgment debtor's property other than the fraudulently transferred property, and may he do so if the sought property is real property?

3. Given the 2014 and 2016 amendments to Fla. Stat. § 56.29, can a judgment creditor seek a monetary judgment under § 56.29(3)(b) for the life of the judgment, or have those amendments situated that remedy solely within § 56.29(9) such that the limitation periods under Fla. Stat. § 726.110 apply?

4. Are claims brought under FUFTA subject to the statutory tolling provisions of Fla. Stat. § 95.051?

5. Does tolling under Fla. Stat. § 95.051(1)(c) apply only to concealment of the tort, or does it also apply to concealment of the tortfeasor?

Our phrasing of these questions "is intended only as a guide." *United States v. Clarke*, 780 F.3d 1131, 1133 (11th Cir. 2015). The Florida Supreme Court may restate the issues and modify the manner in which the answers are given. *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1251 (11th Cir. 2020). "[I]f we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed, we hope the [Florida] Supreme Court will feel free to make the necessary corrections." *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1312 (11th Cir. 2000).

We thus defer our decision in this case until the Florida Supreme Court has had the opportunity to consider our certified questions and has determined whether to exercise its discretion in

22-11020                    Opinion of the Court                    23

answering them.  The entire record of this case, including the parties' briefs, is transmitted to the Florida Supreme Court.

**QUESTIONS CERTIFIED.**